489 So.2d 275 (1986)
Thomas R. CHANDLER C/W Elmore L. Chandler
v.
BUNGE CORPORATION, Public Grain Elevator of New Orleans, Inc. Sears, Roebuck and Company, American Optical Corporation and Continental Grain Company.
Nos. CA-4897, CA-4898.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
Writ Denied September 8, 1986.
*277 Harry E. Forst, New Orleans, for plaintiffs-appellants, Thomas and Elmore Chandler.
Adams & Reese, Thomas J. Wyllie, Rebecca A. Bush, New Orleans, for appellee, Continental Grain Co.
McGlinchey, Stafford, Mintz, Cellini & Lang, Wayne Fontana, New Orleans, for appellee, Bunge Corp.
Johnston & Duplass, Gary Zwain, Steven B. Witman, New Orleans, for appellee, Public Grain Elevator.
Hebert, Mouledoux & Bland, André J. Mouledoux, Alan G. Brackett, New Orleans, for intervenors, T. Smith & Son, Inc. and The Home Ins. Co.
Camp, Carmouche, Barsh, Hunter, Gray, Hoffman & Gill, David F. Bienvenu, Nancy A. Donovan, New Orleans, for intervenors, I.T.O. Corp. and Fidelity & Cas. Co. N.Y.
Before GULOTTA, WILLIAMS and ARMSTRONG, JJ.
GULOTTA, Judge.
In these consolidated suits by two former longshoremen who allegedly contracted lung disease from inhaling grain dust, plaintiffs appeal from a summary judgment dismissing their damage claims against the defendant grain elevator companies who stored the grain and conveyed it to the ships where plaintiffs worked. Because we conclude there are genuine issues of material fact concerning plaintiffs' allegations, we reverse and remand for a trial on the merits.
Elmore L. and Thomas F. Chandler alleged that they developed pneumonoconiosis from inhaling grain dust during their respective 18 and 38 year careers as laborers employed by various stevedoring companies loading grain into the holds of ships on the Mississippi River. According to the petitions, the defendant grain elevators, Public Grain Elevator of New Orleans, Inc., Bunge Corporation, and Continental Grain Company, were either negligent, strictly liable, or absolutely liable for exposing plaintiffs, without warning, to the harmful effects of the grain. Also named as defendants were American Optical Corporation and Sears, Roebuck and Company, the manufacturer and distributor of face masks worn by plaintiffs during their employment to minimize inhalation of dust.
In support of their motion for a summary judgment, the grain elevators argued that they did not employ or control plaintiffs *278 and therefore owed no legal duties to warn them of the hazards of grain dust or to provide them with a safe place to work. Defendants further contend that the loading of grain onto a vessel was not an ultrahazardous activity that would make them absolutely liable. Without written reasons, the trial judge granted the motion and dismissed the defendant grain elevators from the suit.
Appealing, plaintiffs contend that the grain elevators owed duties to refrain from doing anything that created an unreasonable and foreseeable risk of injury or harm. In this connection, plaintiffs point that during loading, the grain traveled directly from the storage elevators to the ship through spouts and that large amounts of grain dust and chemical fumes became airborne as the chemically treated grain left the spouts and entered the holds of the vessels. According to plaintiffs, because the defendant elevators created the dust hazard, they should have had a better method of controlling the dust and chemicals, and had a duty to warn plaintiffs of the hazards associated with handling grain. Plaintiffs further contend that a trial on the merits is necessary for a full evidentiary hearing on the issue of whether grain handling is an ultrahazardous activity.
The petition, depositions, and affidavits establish the following facts. The bulk grain travelled from the elevators' storage silos by conveyer belt and through spouts to the vessels. Plaintiffs, who were employed by the stevedoring companies, labored on or in the holds of the vessels to distribute the incoming grain evenly in the storage area. In their early careers, plaintiffs shoveled the grain as it left the spouts after traveling from the grain elevators, but later operated machines that ejected the grain into the cargo area. Large amounts of dust were generated in the hold as the grain left the spouts or machines, and plaintiffs also smelled fumes of chemicals that had been placed on the grain by elevator personnel. According to the Chandlers, the defendants owned and maintained the spouts as part of their premises, and some of the elevators unsuccessfully attempted to control the problem by installing dust collection systems in the spouts.
At all times plaintiffs worked for stevedoring companies, not the grain elevators, and took all their orders from the stevedoring foreman who were hired by the vessel owners to load the grain. Although some grain elevator employees were aboard the vessels to communicate with other elevator personnel concerning the flow of grain, it was the stevedoring foreman who supervised the plaintiff-laborers and relayed instructions to the grain elevator personnel.
Plaintiffs received no safety instructions concerning grain dust from either the stevedoring companies or the grain elevators, and provided their own clothing and masks to minimize inhalation of grain dust. Grain tariffs of the Public Grain Elevator of New Orleans, Inc. provide that the vessels "shall take all reasonable steps to minimize dust conditions during loading operations" and that the stevedore "shall take all necessary safety and fire precautions, and comply with recognized commercial and marine safety practices and procedure and safety regulations established by the Elevator". A 1975 supplement to the tariff provides that the stevedore shall "control and minimize to the greatest possible extent the amount of grain dust emitted into the atmosphere during loading operations...."
Under the duty-risk doctrine, a defendant can be found negligent only if he had a duty to observe a certain standard or care toward the plaintiff, breached that duty, and the breach was a cause-in-fact of the plaintiff's injury which the duty was designed to prevent. Boyer v. Johnson, 360 So.2d 1164 (La.1978); Ainsworth v. Treadway, 361 So.2d 957 (La.App. 4th Cir. 1978), writ denied 363 So.2d 1384 (La.1978).
In cases involving employment-related accidents, the duty to provide a worker with a safe place to work, including proper tools, equipment, and methods for safely performing his duties, is primarily on the employer and the employer's executive officers. Kent v. Gulf State Utilities Co., infra. Nonetheless, even though he *279 may not be their employer, the owner and operator of a facility must exercise reasonable care for the safety of persons on or around his property. Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979). Where multiple parties are involved, the respective duties and conduct of all of them must be analyzed and compared to determine their responsibility. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La. 1982).
Although summary judgment procedure is useful when the undisputed facts of an accident are well established, it is not appropriate in negligence cases where the determination whether or not a defendant's conduct constitutes a tort involves a factual dispute. Cosse v. Schwegmann Brothers Giant Supermarkets, 336 So.2d 1074 (La. App. 4th Cir.1976); Continental Casualty Company v. McClure, 313 So.2d 260 (La. App. 4th Cir.1975); Bertrand v. Howard Trucking Co., Inc., 406 So.2d 271 (La.App. 3rd Cir.1981), writ denied 410 So.2d 763 (La.1982). In summary judgment cases all doubt about the existence of material issues of fact are resolved against the granting of a summary judgment and in favor of a trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Faciane v. Southern Shipbuilding Corp., 446 So.2d 770 (La.App. 4th Cir.1984).
Applying the above to the instant case, we conclude that summary judgment procedure is inappropriate to dismiss the grain elevators in the instant case.
The thrust of plaintiffs' allegations of negligence are that defendants failed to warn of the hazards of grain dust and to provide necessary protection to plaintiffs. Although we recognize that the duties to provide such warnings and protection to insure the safety of a worker are primarily upon the employer, the depositions and affidavits raise serious questions about the role of grain elevators in the process of loading these vessels with grain. Although plaintiffs never entered the elevator premises, the spouts for transferring the grain from the storage facilities to the vessels were provided by the elevators, were directly connected to their elevator premises, and generated large amounts of dust as the grain left them. Plaintiffs' depositions also establish that the elevators treated the grain with chemicals that produced fumes. Significantly, some of the elevators made attempts to minimize the creation of dust during vessel loading by installing dust collection devices in the spouts.
Under these circumstances, the nature of the loading process, the potential danger from chemicals used to treat the grain, the state of the art of dust collection and the medical causation of plaintiffs' lung problems are serious factual questions which require a trial on the merits. Until these factual issues are resolved on the merits, no determination can be made whether or not the grain elevators breached any duties to warn or to protect these plaintiffs where these defendants, though not the employers, were an integral part of the grain loading operation.

LSA-C.C. ART. 2317STRICT LIABILITY
Applying the above, we likewise conclude that genuine issues of material fact remain concerning plaintiffs' allegations of strict liability under LSA-C.C. Art. 2317.
In order to recover under this codal article, a plaintiff must prove that the thing causing damage was in the care or custody of the defendant, and that it had a vice or defect, i.e. some condition that occasioned unreasonable risk of injury. Jones v. City of Baton Rouge,, 388 So.2d 737 (La.1980). Although a plaintiff is relieved of proving that the owner knew or should have known of the risk involved, he still must prove that the thing presented an unreasonable risk of harm that resulted in the damage. Kent v. Gulf States Utilities Co., supra. The term "custody", as used in this article, moreover, means supervision and control. Colleps v. State Farm General Ins. Co., 446 So.2d 988 (La.App. 3rd Cir.1984).
The custodian's duty to take reasonable steps to prevent injury from *280 unreasonable risk of harm under LSA-C.C. Art. 2317 strict liability is the same as in ordinary negligence cases and depends on the particular facts. Kent v. Gulf States Utilities Co., supra. Because of the unresolved factual issues earlier discussed in the instant case, and because the dust was apparently generated at the point the grain left the spouts in the holds of the vessels, a trial on the merits is required before it can be determined whether the grain elevators had "custody" of the grain and whether their actions or inactions created an unreasonable risk of harm to these plaintiffs to warrant a finding of strict liability.

ULTRAHAZARDOUS ACTIVITY
We further find merit to plaintiffs' contention that they are entitled to a trial on the merits to determine whether handling grain is an ultrahazardous activity.
Louisiana courts have imposed absolute liability, i.e. liability without proof of negligence or fault, when harm results from the risks inherent in the nature of certain activities that can cause injury even when conducted with the greatest prudence and care. Such activities have included pile driving, storage of toxic gas, blasting with explosives, and crop dusting with airplanes. Ultrahazardous activities are determined as a matter of policy, after a balancing of claims and interests, a weighing of the risk and the gravity of harm, and the consideration of the individual and societal rights and obligations. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971).
The Louisiana Supreme Court has noted, however, that ultrahazardous activities involve an actor who is the sole cause of the damage and a victim who seldom has the ability to protect himself. Kent v. Gulf State Utilities Co., supra, (in footnote) Although a federal decision[1] has indicated that there is nothing "inherently dangerous" in loading a vessel with grain, we have found no Louisiana cases where grain loading was or was not an ultrahazardous activity.
Based on the record before us, we cannot determine, as a matter of law, whether the risks inherent in the activity of loading grain can cause injury even when conducted with the greatest prudence and care or whether it is possible to protect workers from the hazardous effects of the dust. Resolution of these issues will depend on further evidence, including, but not limited to, medical causation and the state of the art of safety devices to prevent inhalation of grain dust. A trial on the merits is therefore necessary to determine whether the loading of grain is an ultrahazardous activity.
Accordingly, for the foregoing reasons, the summary judgment dismissing the defendant grain elevators is reversed and set aside. The matter is remanded for further proceedings consistent herewith.
REVERSED AND SET ASIDE; REMANDED.
NOTES
[1] See Fitzgerald v. Compania Naviera La Molinera, 394 F.Supp. 413 (E.D.La.1975).