554 So.2d 1361 (1989)
Tony TRIPLETTE
v.
EXXON CORPORATION d/b/a Exxon Company, USA.
No. 88 CA 1705.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
Jeffrey M. Bassett, Opelousas, for plaintiff-appellant Tony Triplette.
Daniel Atkinson, Leonard Cardenas, III, Baton Rouge, for defendant-appellee Midwest Cooling Tower Services, Inc. U.S. Fidelity & Guar. Co.
E. Burt Harris, New Orleans, for defendant-appellee Exxon Corp.
David Johnson, Baton Rouge, for intervenor-appellee Aetna Cas. and Sur. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment.

FACTS
On or about June 4, 1985, plaintiff, Tony Triplette, was employed as a laborer by Midwest Cooling Tower Services, Inc. (Midwest). Midwest had a contract with Exxon Corporation (Exxon) to repair its cooling towers at the Exxon Refinery in Baton Rouge. On that date, plaintiff, while working in a six-by-six foot bay within the cooling tower, was walking along a board or pipe located between two vertical posts, removing drift eliminators which lay upon a 2 × 4 board. Suddenly, the board or pipe upon which plaintiff was walking broke, and plaintiff fell some fifty feet, injuring his shoulder.
*1362 On June 3, 1986, plaintiff filed suit for damages against Exxon and Midwest. In his petition, plaintiff alleged that Exxon was negligent for failing to provide plaintiff a proper platform, failing to warn that the supports were rotten, failing to provide safety equipment, and failing to supervise the work. Plaintiff also alleged that Exxon was strictly liable for plaintiff's damages. Plaintiff further alleged that Midwest was liable to plaintiff for Exxon's negligence pursuant to an indemnity agreement.[1]
On October 23, 1987, Aetna Casualty and Surety Company (Aetna), Midwest's worker's compensation insurer, filed a petition for intervention, seeking reimbursement for worker's compensation and medical benefits paid to or on behalf of plaintiff.
Thereafter, Exxon filed a motion for summary judgment, contending that Exxon was not liable to plaintiff as a matter of law. After a hearing, the trial court granted Exxon's motion for summary judgment and dismissed plaintiff's demands. From this adverse judgment, plaintiff appeals, assigning the following errors:
1. The trial court erred in finding there was no material issue of fact as to whether Exxon's negligence caused or contributed to plaintiff's injury.
2. The trial court erred in finding there was no issue of material fact as to whether Exxon was liable to plaintiff under a theory of strict liability.
3. The trial court erred in finding that there was no material issue of fact as to whether plaintiff was engaged in an ultra hazardous activity at the time of his injury.

NEGLIGENT LIABILITY UNDER LSA-C.C. ART. 2315
Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties. Ainsworth v. Shell Offshore, Inc., 829 F.2d 548 (5th Cir.1987), cert. denied, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988); Smith v. Zellerbach, 486 So.2d 798 (La. App. 1st Cir.1986), writ denied, 489 So.2d 246 (La.1986); Ricky Wayne Massey, et al. v. Century Ready Mix Corporation, 552 So.2d 565 (La.App. 2nd Cir.1989), decided on November 1, 1989, under docket no. 20,879-CA consolidated with 21,248-CA. This rule, however, is subject to two well-delineated exceptions. Under the first exception, a principal may not avoid liability for injuries resulting from an ultrahazardous activity by hiring out the work to an independent contractor. Ainsworth v. Shell Offshore, Inc., supra; Smith v. Zellerbach, supra; Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La. App. 1st Cir.1978), writ denied, 366 So.2d 575 (La.1979).
Whether an activity qualifies as ultrahazardous in Louisiana is a question of law to be determined after a balancing of claims and interests, a weighing of the risk and the gravity of harm, and the consideration of the individual and societal rights and obligations. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971); Chandler v. Bunge Corporation, 489 So.2d 275 (La.App. 4th Cir.1986), writ denied, 492 So.2d 1219 (La.1986). See Ainsworth v. Shell Offshore, Inc., supra; Hawkins v. Evans Cooperage Co., Inc., 766 F.2d 904 (5th Cir.1985); Perkins v. F.I.E. Corporation, 762 F.2d 1250 (5th Cir. 1985).
The court in Perkins discussed the Louisiana doctrine of ultrahazardous activity in detail, finding the doctrine to be defined by three boundaries: (1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury. This third element requires that the activity "can cause injury to others, even when conducted with the greatest prudence and care." Kent v. Gulf States Utilities Company, 418 So.2d *1363 493, 498 (La.1982). The "ultrahazardous" label is thus limited to those activities which present "a risk of harm that cannot be eliminated through the exercise of due care." O'Neal v. International Paper Co., 715 F.2d 199, 202 (5th Cir.1983).
In the instant case, the activity conducted by plaintiff was repairing cooling towers. While this work is routinely performed at great heights (in this case fifty feet) with the proper safety equipment and due care, this activity is one which can be performed safely without great risk of injury. The activity does not rise to the level of those activities enumerated in Kent, in which, with the exercise of care and prudence, still encompass great risk of injury or harm.
As pointed out in the deposition testimony and/or affidavit of Daniel A. Wiltz, president and owner of Midwest, plaintiff was improperly using his safety belt at the time of the accident. Rather than hooking the safety belt lanyard to the lanyard after looping the lanyard around the vertical post, plaintiff hooked both ends back to his safety belt. As a result, plaintiff could not reach the center of the bay without unhooking his belt. Had the proper method been employed, the safety lanyard would have been of sufficient length to permit plaintiff to reach beyond the center of the six-by-six foot bay in which he was working without unhooking his safety lanyard. However, because plaintiff improperly used the safety belt, he unhooked the belt to reach the center of the bay to complete his task of removing the drift eliminators. Had the safety belt been used properly by plaintiff or had Midwest used life lines, this accident would not have occurred. Clearly, the activity did not constitute an "ultrahazardous activity" so as to impose liability on Exxon.
The second exception imposes liability upon a principal for the negligent acts of an independent contractor when the principal reserves the right to supervise or control the work. Hawkins v. Evans Cooperage Co., Inc., supra; Smith v. Zellerbach, supra. It is not the supervision and control which is actually exercised that is significant, but it is the right to exercise it which is of primary concern in determining whether a principal may be held liable for the torts of an independent contractor. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972); Smith v. Zellerbach, supra. The fact that the owner periodically inspected the job site to be sure that work was being performed in accordance with the specifications does not constitute the exercise of operational control. Williams v. Gervais F. Favrot Company, 499 So.2d 623 (La. App. 4th Cir.1986), writ denied, 503 So.2d 19 (La.1987).
Further, the court in Hemphill v. State Farm Ins. Company, 472 So.2d 320, 322 (La.App. 3rd Cir.1985), stated that the "control" determination "depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is actually exercised by the principal is less significant."
In the case sub judice, the contract provided that Midwest would furnish all supervision, labor, and equipment. Exxon did not retain the right to control or supervise the work performed by Midwest. Plaintiff received his instructions from Midwest and was supervised by Midwest personnel. Although Exxon reserved the right to terminate the contract with Midwest at will, Exxon was still obligated to pay for the work done on or before the date of termination and for reimbursement of all expenses. Further, even though the contract required that Midwest comply with Exxon safety standards, this requirement does not signify the requisite right of operational control sufficient to vitiate the independent contractor relationship. The test for determining owner-independent contractor status is direct supervision over the step-by-step process of accomplishing the work.
After reviewing the depositions, answers to interrogatories, etc., we find that the trial court did not err in finding, as a matter of law, that the relationship between Exxon and Midwest was that of *1364 owner and independent contractor and that Exxon did not retain the right to control or supervise the work by Midwest. The summary judgment evidence does not support the imposition of liability against Exxon for the negligence of an independent contractor.

STRICT LIABILITY UNDER LSA-C.C. ART. 2322
LSA-C.C. art. 2322 provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
The owner's fault is founded upon the breach of his obligation to maintain or repair his building so as to avoid the creation of undue risk of injury to others. The owner is absolved from his strict liability neither by his ignorance of the condition of the building, nor by circumstances that the defect could not easily be detected. He is absolved from such liability only if the thing owned by him falls, not because of its defect, but rather because of the fault of some third person or of the person injured thereby or because the fault is caused by an irresistible cause or force not usually foreseeable. Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1978).
LSA-C.C. art. 2322 imposes liability upon the owner of a building for injury resulting from the building's ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction. To prevail on this strict liability claim, the plaintiff must prove that (1) there was a building; (2) the defendant was its owner; and (3) injury was caused by a "ruin," resulting from a vice in original construction or neglect to repair. Ainsworth v. Shell Offshore, Inc., supra; Olsen v. Shell Oil Company, supra. See also Mason v. Liberty Mutual Insurance Company, 423 So.2d 736 (La.App. 4th Cir. 1982), writ denied, 425 So.2d 773 (La.1983).
In Stine v. Creel, 417 So.2d 1243 (La. App. 1st Cir.1982), writ denied, 422 So.2d 163 (La.1982), this circuit, when faced with a similar factual case, stated:
In this instance, Stine was going about a repair job to keep the building from falling to ruin. Crown Zellerbach was repairing and protecting its property. One of the obvious effects of this job would be to avoid the very liability imposed by RCC 2322. Olsen v. Shell Oil Co., [La.] 365 So.2d 1285, will not impose liability in this instance. It was not the ruin of the roof that caused the fall and resulting injuries to Stine. It was the unsafe manner by which Stine sought to remove the roof section that caused his fall. To follow the rationale of Stine would be to place strict liability upon any owner who went about repairing a building. To the contrary, the law should and does encourage owners to repair. If they elect not to repair, then the owner is strictly liable for damages resulting from the ruin or collapse of his building.
Further, RCC 2317 gives Stine no relief. Clearly Crown Zellerbach had custody of the warehouse. But the roof of the building, under the facts of this case, does not constitute a defective thing that caused injury to Stine. Again, it was not the roof that caused the injuryit was the manner about which Stine sought to remove it that caused the injury. (emphasis added) 417 So.2d at 1246.
In the instant case, prior to commencing the repairs, Midwest evaluated the Exxon cooling tower and determined that its employees could safely perform the repair work. Midwest and its employees, including plaintiff, were fully aware that the cooling tower contained boards which were rotten, which was the reason for the repairs. Plaintiff and his co-workers were experienced at this type of work and were in the process of removing the very boards which broke, resulting in plaintiff's fall.
Further, the contract between Exxon and Midwest provided that Midwest would provide all necessary equipment to perform the job. In his deposition, plaintiff stated that the safety harness he was using at the time of the accident would not reach the full distance between the posts to which he would attach his safety belt. Plaintiff, therefore, unhooked the safety belt at certain *1365 times to perform the repair work. As pointed out earlier, had plaintiff properly utilized the safety belt lanyard, the belt was sufficient in length to safely reach the full distance of the six-by-six foot bay, without having to unhook the safety line.
Clearly, plaintiff's injury was not caused by the ruin of the building, but was caused by the manner in which plaintiff improperly used the safety belt as he sought to remove boards within the cooling tower. Having so determined, the trial court found that Exxon was entitled to judgment as a matter of law. We have reviewed the record and cannot say that the trial judge was manifestly erroneous in so finding.

CONCLUSION
For the above reasons, the trial court judgment, granting Exxon's motion for summary judgment, is affirmed. Plaintiff is cast for all costs.
AFFIRMED.
SAVOIE, J., agrees with the result.
NOTES
[1] Exxon also filed a cross-claim against Midwest for indemnification pursuant to their indemnity agreement.