631 So.2d 1374 (1994)
Richard BURTON, et al.
v.
CONOCO OFFSHORE, INC., et al.
No. 93-CA-599.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1994.
*1375 Joseph L. Waitz, Jr., Waitz & Downer, Houma, for plaintiff-appellant.
Patricia A. Krebs, Josh M. Kantrow, Nesser, King & LeBlanc, New Orleans, for defendant-appellee.
Janice B. Unland, Aucoin & Unland, Metairie, for intervenors-appellees.
Before GAUDIN, GRISBAUM, JJ., and JOHN C. BOUTALL, J. Pro Tem.
GRISBAUM, Judge.
Parties plaintiff and intervenor appeal the judgment of the trial court granting summary judgment in favor of defendant, Conoco Offshore, Inc. (Conoco). We affirm.

ISSUES
We are called upon to determine two specific issues:
(1) Whether the trial court erred in finding that there were no genuine issues of material fact, and
(2) Whether the trial court erred as a matter of law in determining that appellant's transportation of the drilling fluid additives was not an ultrahazardous activity.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Mr. Richard Burton, was an employee of LaVac Marine (LaVac), which is a trucking company that provides vacuum trucks for the transportation of certain materials. On October 4, 1989, he was sent by LaVac to Grand Isle Shipyard to pick up and to transport Conoco's drilling fluid additives to a waste recycling facility. Mr. Burton was *1376 required to empty the additives from numerous storage drums into the LaVac truck and then rinse the drums before transporting the additives. During this process, plaintiff was allegedly splashed with the waste resulting in a serious leg injury.
In order to dispose of their drilling fluid additives, Conoco contracted with Omega Waste Management (Omega), a broker of waste disposal and laboratory analysis services. Omega analyzed the additives, located a facility to recycle the waste and then contracted with LaVac to transport the waste to the recycling facility.
Plaintiff filed suit against Conoco and Omega alleging negligence on their part for failing to warn him of the nature of the waste being transported and of the potential risks involved. Additionally, plaintiff claims defendants failed to provide safety equipment and failed to adequately supervise the handling of the hazardous waste. LaVac intervened, claiming that in the event it is required to pay worker's compensation benefits to plaintiff, it is entitled to reimbursement.
Omega filed a motion for summary judgment claiming that it was the statutory employer of plaintiff and, therefore, plaintiff could only sue in worker's compensation and not in tort. Summary judgment was granted and plaintiff appealed. However, plaintiff later dismissed the appeal on his own motion.
Conoco filed its first motion for summary judgment on September 23, 1991 which was denied because the trial court found that there was a factual question as to the composite of the additives. In December 1992, after the deposition of expert Dr. William George was taken, which revealed the chemical make-up of the drilling fuel additives, Conoco filed a second motion for summary judgment. Summary judgment was granted and plaintiff and intervenors now appeal.

STANDARD OF REVIEW
This Court has succinctly outlined its standard of review when reviewing summary judgment. See Toups v. Hawkins, 518 So.2d 1077 (La.App. 5th Cir.1987). In summary, we stated that when a motion for summary judgment has been granted, we must review the pleadings, supporting affidavits, depositions and exhibits submitted in connection with the motion for summary judgment. If the record shows the existence of true issues of fact, then summary judgment is inappropriate. However, if there are no material factual issues, we must apply the second prong of the test and determine whether the mover is entitled to judgment as a matter of law.

ANALYSISISSUE ONE
The facts concerning this accident are virtually uncontested. Conoco contracted with Omega to analyze and properly dispose of their drilling fluid additives. In turn, Omega contracted with LaVac to transport the waste to a recycling facility. LaVac sent appellant, one of its employees, to complete the job using LaVac's truck and equipment. When he arrived at Grand Isle Shipyard, he dealt with Mr. Terry Dover, an employee of Omega. Appellant never spoke to anyone from Conoco, nor did he receive any instructions from Conoco as to how to perform the job. Appellant made his own decision as to what to wear while performing the job and chose not to wear any protective clothing, such as chemical resistant gloves, safety goggles or a tyvek suit.
While there may be a factual issue as to the cause of appellant's injury, there is no genuine issue of material fact concerning the liability of Conoco. The relationship between the parties is uncontested. Omega was hired by Conoco as an independent contractor. Omega then hired LaVac as a subcontractor. Appellant was an employee of LaVac. There was no contract or communication between Conoco and appellants. Accordingly, the issues raised deal with questions of law; as such, it becomes necessary to determine whether Conoco was entitled to judgment as a matter of law.

ANALYSISISSUE TWO
As a matter of law, a principal is not liable for the negligence of an independent contractor. However, there are two exceptions. A principal may not avoid liability for the acts of an independent contractor when the principal reserves the right to supervise or control the contractor's work or when an ultrahazardous activity is involved. Triplette *1377 v. Exxon Corp., 554 So.2d 1361 (La.App. 1st Cir.1989).
In determining liability, the key factor is the degree of control the principal can exercise over the contractor's performance. Davenport v. Amax Nickel, Inc., 569 So.2d 23 (La.App. 4th Cir.1990), writ denied, 572 So.2d 68 (La.1991). The record clearly establishes that Conoco in no way supervised or controlled any aspect of appellant's job performance. Mr. Dover, the operations manager of Omega, stated in his deposition that the only involvement Conoco had in getting rid of the additives was contacting Omega and deciding to recycle the waste rather than dispose of it. Mr. Burton himself stated that he had no contact with any Conoco employees the day he performed his job. Furthermore, Mr. Burton also stated that he made the decisions on how to do his job and whether it was necessary to wear safety equipment. In light of the evidence, we cannot say that Conoco exercised any control over appellant.
The second inquiry is whether the transportation of drilling fluid additives constitutes an ultrahazardous activity. Our brothers of the First Circuit implemented the United States Fifth Circuit three-prong test in determining whether an activity is ultrahazardous, to-wit: "(1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury." Triplette v. Exxon Corp., supra, at 1362 (citing Perkins v. F.I.E. Corp., 762 F.2d 1250, 1267-68 (1985)).
We will now review our record facts to determine whether the activity complained of is ultrahazardous. We start with the storage and transportation of drilling fluid additives. The record shows these additives were stored in movable storage drums above ground. Intervenors assert that the additives came from the ground and, therefore, the storage of the additives relates to the land. While there is no objective evidence in the record indicating the source of the additives, the source of the waste is irrelevant. It is the activity of storing and transporting the waste material that is pertinent. The activity of storing the additives above ground in movable drums and the transporting of the additives in trucks does not relate to the land or other immovables.
The more crucial issue in determining whether the transportation of the additives from the drums to the truck was ultrahazardous is whether it could have been safely done. Davenport v. Amax Nickel, Inc., supra. If the activity can cause harm despite the exercise of due care, then the activity is ultrahazardous by its nature. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).
Appellant maintains that the transfer of the waste from the drums to the truck and the subsequent rinsing of the drums cannot be done in such a manner so as to prevent injury. However, the record demonstrates otherwise. The chemical composite of the drilling fluid additives included zero to five percent of Poly Acrylamide. Acrylamide is considered a hazardous waste by the Environmental Protection Agency. Just because a substance is classified as hazardous waste does not mean that it qualifies as ultrahazardous. Dr. George stated that in his expert opinion the additives could have been handled safely.
Appellee first established that the additives could in fact be transported without a high degree of risk of injury. It then showed that appellant did not perform his job in a safe workmanlike manner. Specifically, Mr. Burton did not use any safety equipment that was available to him. He chose cloth gloves over his chemical resistant gloves. He did not put on a tyvek suit, which was readily available to him through his employer, LaVac. Furthermore, he signed a waste manifest form which indicated the type of waste material he was loading. The manifest form had a section entitled "special handling instructions" of which appellant was aware. The instructions stated that the additives were to be handled like hazardous material using all safety precautions. Appellant stated that he was aware of this section but did not read it.
Once Conoco established that the additives could be handled safely, the burden shifted to *1378 appellant to show that the waste could not be handled safely. See Toups v. Hawkins, supra. The record is devoid of any evidence that indicates this job could not be performed without injury. Therefore, we find that the activity involved could be done without injury, provided due care is exercised; thus, the activity is not ultrahazardous. Ergo, we find that Conoco has amply demonstrated that it is entitled to judgment as a matter of law.
In summary, there are no genuine issues of material fact; accordingly, the only questions were whether a duty to warn was owed and whether the activity was ultrahazardous. Those questions, we find, in the negative. Ergo, Conoco, as the principal, did not owe any duty to Mr. Burton, a sub-contractor. Furthermore, the activities of storing drilling fluid additives in movable drums and transporting the additives is not ultrahazardous.
For the reasons assigned, the trial court's judgment is hereby affirmed. All costs of this appeal are to be paid by the appellant.
AFFIRMED.