LeBLANC, Judge.
Plaintiffs, Joseph Ruby Scott and Elaine Terrebonne Scott, appeal from a judgment rendered in their favor against defendants, Wesley L. Fitch, Coastal Dragline Works, Inc. and United States Fidelity and Guaranty Company (USF & G).[1] Mr. and Mrs. Scott brought suit against these defendants seeking damages for personal injury and property damages resulting from an automobile accident.[2]
The automobile accident, from which these claims arise, occurred on March 19, 1984. Mrs. Scott was driving her vehicle in a northbound lane of Louisiana Highway 56. She stopped her vehicle at a red light. Another vehicle, driven by Mr. Wayne Authement, stopped behind Mrs. Scott’s vehicle. Another northbound vehicle driven by Mr. Wesley L. Fitch and owned by Coastal Dragline Works, Inc. Mr. Fitch’s employer, approached the intersection where the other two cars were stopped. However, due to the wet condition of the road, Mr. Fitch’s vehicle slid into the rear of the Authement vehicle when Mr. Fitch tried to stop at the intersection. Mr. *697 Authement’s vehicle was pushed forward into the rear of Mrs. Scott’s vehicle.
Mrs. Scott alleged that, as a result of the accident, she sustained injuries to her left shoulder, neck, right knee and right foot. She further claimed that these injuries prevented her from returning to work. Due to these injuries, damages were claimed for medical expenses, pain and suffering, mental anguish, permanent disability, lost wages and disfigurement. Damages were also claimed for property damage resulting to Mrs. Scott’s vehicle, Mr. Scott also asserted a claim for loss of consortium.
After a trial on the merits, the jury rendered a verdict finding that the accident was caused by the negligence of Wesley Fitch. The jury awarded plaintiffs the following damages:
Elaine Scott:
Property damage to automobile.$ 331.22
Medical expenses, past & future_ 3,000.00
Pain and suffering, past & future 12,000.00
Loss of earnings, past & future 14,000.00
Permanent disability. 0
Disfigurement. 0
Joseph Scott:
Loss of Consortium. 0
Accordingly, the trial court rendered judgment in favor of Mr. and Mrs. Scott and against Wesley Fitch, Coastal Dragline Works, Inc. and USF & G in the amount of $29,331.22.
Based on a joint stipulation between the parties, the judgment rendered in favor of Mr. and Mrs. Scott was subject to a judgment in favor of an intervenor in this action, Insurance Company of North America, in the amount of $17,000.00.[3]
Pursuant to another stipulation between the parties, the judgment rendered in favor of Mr. and Mrs. Scott was also subject to a judgment rendered in favor of intervenor, Capital Enterprise Insurance Company (CEIG), in the sum of $331.22, representing property damage to the Scott vehicle.[4]
Plaintiffs appeal from the trial court’s judgment, claiming that the damages awarded by the jury were inadequate and that the trial court erred in failing to order a new trial or an additur.
Defendants contend that the damages awarded by the jury were not manifestly erroneous. Defendants argue that Mrs. Scott failed to prove that the accident caused the injuries to her right knee and right foot and that the jury’s award clearly indicates that the jury determined she was not entitled to damages resulting from the knee and foot injuries. During closing argument, counsel for defendants argued that defendants were not responsible for any of Mrs. Scott’s injuries. However, in the alternative, he argued that defendants had caused the neck and shoulder injury but not the knee and foot injury, it should award to Mrs. Scott only $3,000.00 in medical expenses, $12,000.00 for pain and suffering, and $14,000.00 for loss of earnings. The jury awarded these exact awards to Mrs. Scott. Thus, defendants contend that the jury award properly reflects the general and special damages which were incurred by Mrs. Scott as a result of the injury to her neck and shoulder only.
After reviewing the testimony presented in this case, we find that the jury was presented with, factual information which supports its implicit findings that the knee and foot injuries were not caused by the automobile accident.
On the day after the accident, March 20, 1984, Mrs. Scott was examined by Dr. Leslie Walker, an expert in the field of general practice. Dr. Walker testified that Mrs. *698 Scott related the history of the automobile accident and indicated that she was experiencing pain in her neck and shoulder. Dr. Walker diagnosed Mrs. Scott’s condition as a cervical strain and contusion and strain of the left shoulder caused by the automobile accident.
Dr. Walker further testified that Mrs. Scott did not complain about any pain or injury to her right knee or her right foot on that date and that she did not relate a history of striking either her right foot or her right knee during the accident.
Thereafter, Dr. Walker examined Mrs. Scott on March 23, 1984, March 29, 1984, and April 3, 1984. Dr. Walker testified that during each of these visits, Mrs. Scott complained of pain in the neck and shoulder but did not complain of pain in the right knee or right foot. At this point, Dr. Walker referred Mrs. Scott to an orthopedist, Dr. Gary Guidry, for further treatment of the cervical and shoulder strains.
Although Mrs. Scott testified that she did report complaints of knee and foot pain to Dr. Walker during these visits, Dr. Walker testified that he would have definitely indicated such complaints in his medical records if Mrs. Scott had reported knee or foot pain. The record indicates that Mrs. Scott’s first report of any type of problem regarding her foot occurred on April 4, 1984, when she was examined by Dr. Gary Guidry. The record also indicates that Mrs. Scott’s earliest report of a problem with her knee occurred on April 6, 1984, when she was again examined by Dr. Guidry.
Dr. Dexter Gary, an expert in orthopedic surgery, also treated Mrs. Scott for her knee and foot problems. The record does not indicate the exact dates on which Dr. Gary examined Mrs. Scott. However, the record does establish that he did not personally examine Mrs. Scott until after April 6, 1984. Dr. Dexter Gary practiced with Dr. Gary Guidry, who saw Mrs. Scott two days earlier, on April 4. They or an associate, Dr. Kennard treated Mrs. Scott on a rotational basis between the dates of April 26,1984, and August 28,1986. During this span of time, two arthroscopic surgical procedures were performed on Mrs. Scott’s right knee to remove a portion of a tom medical meniscus and to remove a posterior horn and its tear and one surgery was performed on her right foot to remove a neuroma. Dr. Gary testified that the medical conditions necessitating these three surgical procedures were related to the trauma of the automobile accident.
However, Dr. Leslie Walker testified that if a person tears a cartilage or a ligament in the knee, they usually feel pain immediately. Based on this testimony, since plaintiff’s knee injury involved the cartilage of the knee, the jury probably determined that she would have experienced pain shortly after the accident if the accident was the cause of the knee injury.
Furthermore, Dr. A.D. Walker, an expert in orthopedic surgery, who examined Mrs. Scott on July 15, 1986, testified that Mrs. Scott’s knee problems were probably caused by something other than the automobile accident since her complaints did not arise until almost a month after the accident. Regarding Mrs. Scott’s foot condition, Dr. A.D. Walker also testified that a neuroma can develop without the occurrence of a trauma.
Based on all of the relevant testimony, we determine that the jury was not manifestly erroneous in determining that Mrs. Scott’s knee and foot injuries were not caused by the automobile accident. Therefore, we need only review the jury’s award of damages to determine if the award is adequate to compensate Mr. and Mrs. Scott for the damages resulting from Mrs. Scott’s neck and shoulder injuries.
We do not need to address the jury’s award for property damage because appellants do not contest this award.
The jury awarded $3,000.00 for past and future medical expenses. The evidence submitted establishes that Mrs. Scott incurred substantially more than $3,000.00 for medical expenses resulting from her neck, shoulder, knee and foot injuries. However, some of the medical bills reflect charges for treatment of the neck and shoulder, as well as the knee and/or foot, *699 but do not specifically itemize the charges, After a complete review of the record, we cannot determine what amounts of these bills are attributable to each particular injury. Plaintiff has failed to prove which amounts of these bills were incurred as a result of the neck and shoulder injury. The total of the medical bills that are attributable solely to the treatment of the neck and shoulder is $1,824.00. Furthermore, there is no evidence to establish that plaintiff is likely to incur future medical expenses for treatment of the neck and shoulder injury. Therefore, we find that the $3,000.00 award for medical expenses is not manifestly erroneous.
Mrs. Scott also contends that the pain and suffering award of $12,000.00 is inadequate. The record establishes that Mrs. Scott complained of pain in her neck and shoulder and sought medical treatment for the neck and shoulder injury for approximately two years after the date of the automobile accident. During this period, the injury was treated conservatively by the use of anti-inflammatory drugs, muscle relaxers, pain medication and physical therapy.
A review of the jurisprudence addressing pain and suffering awards for similar injuries leads us to the conclusion that the $12,000.00 pain and suffering in this case is not inadequate. In Evans v. Newton, 459 So.2d 586 (La.App. 5th Cir.1984), $10,000.00 was awarded for the pain and suffering that resulted from a chronic cervical and lumbar sacral strain. The injury caused pain and suffering for approximately twenty-eight months. In Slaughter v. Royal Globe Ins. Co., 426 So.2d 377 (La.App.2d Cir.), writ denied, 433 So.2d 166 (1983), the plaintiff suffered an acute cervical sprain and an acute lumbosacral sprain which resulted in pain and discomfort for several years after the accident. In Slaughter, the court awarded $10,000.00 for general damages.
The jury awarded $14,000.00 for loss of earnings, past and future. The testimony established that Mrs. Scott had an average yearly income of $14,128.11 for the three years prior to the year in which the accident occurred. Most of the testimony regarding Mrs. Scott’s inability to return to work after the accident occurred was in reference to her knee injury.
Dr. Leslie Walker testified that when he examined Mrs. Scott after the accident in March of 1984, he recommended that she should not return to work at that time. However, he also testified that he made no recommendation regarding whether or not she should return to work after April 3, 1984, when he referred her to an orthopedic specialist. After that date, Mrs. Scott’s neck and shoulder injury was treated by Dr. Guidry and Dr. Gary for a few months. The medical testimony does not establish that either of these doctors expressed any opinion about an inability to return to work as a result of Mrs. Scott’s neck and shoulder injury.
Dr. Donald J. Judice, an expert in neurosurgery, treated Mrs. Scott’s neck and shoulder injury from June 19,1984 through February 4, 1986. His testimony also did not establish that Mrs. Scott’s neck and shoulder injury prevented her return to work.
Therefore, we find that Mrs. Scott did not prove a loss of earnings in excess of $14,000.00. Thus, we affirm the jury’s award.
Mrs. Scott also contends that the jury's failure to award any damages for permanent disability and disfigurement is manifestly erroneous. We disagree. Dr. Judice’s testimony establishes that Mrs. Scott did not have any permanent or residual impairment of her neck or shoulder as of February 4, 1986. Also, there is no evidence to support a claim of disfigurement as a result of Mrs. Scott’s neck and shoulder injury.
Mr. Scott argues that the jury erred in failing to award damages for his loss of consortium. Mr. Scott testified that although he had helped with housework before the automobile accident, he had to do a greater amount of housework after the accident because Mrs. Scott was not able to do the work. He also testified that he and his wife had enjoyed going dancing before *700 the accident, but since the accident, they are no longer able to dance. He testified that although he and his wife had arguments before the accident, their arguments were more frequent after the accident.
However, we do not find that these facts necessarily support an award of loss of consortium. Mr. Scott also testified that Mrs. Scott’s knee and foot injury was the greatest factor causing her not to be able to perform the housework. He did not establish that her neck injury prevented her from doing housework or dancing. Furthermore, there is no indication that the arguments between Mr. and Mrs. Scott were a result of her neck and shoulder injury. Therefore, we find that the jury was not manifestly erroneous in not awarding any damages to Mr. Scott for loss of consortium.
For these reasons, the judgment of the trial court is affirmed.
Costs of this appeal are assessed against appellants.
AFFIRMED.

. At the time of the accident, hereinafter described, USF & G carried a policy of vehicular liability insurance on the vehicle owned by defendant, Coastal Dragline Works, Inc.

. Suit was also filed against Capital Enterprise Insurance Company. However, the correct name of this party is Capital Enterprise Insurance Group (CEIG). At the time of the accident, CEIG carried a policy of vehicular liability and uninsured motorist insurance coverage on the vehicle owned by plaintiffs.

. All parties to this proceeding stipulated that Mrs. Scott received worker’s compensation payments and medical payments from Insurance Company of North America. The parties agreed that if judgment was rendered in favor of plaintiffs and against defendants, the Insurance Company of North America was entitled to recover judgment for the first $26,059.80 in past lost wages, and for the first $24,649.01 in medical payment benefits rendered in the judgment.

. Pursuant to the insurance policy covering the Scott vehicle, CEIG paid benefits to plaintiffs for property damage. Based on this payment, CEIG intervened in this action, claiming legal and conventional subrogation to the rights of the plaintiffs against the other defendants in this action. The parties stipulated that USF & G would pay to CEIG the amount of damages awarded by the jury to plaintiffs as property damages and that this amount would be deducted from the total award to plaintiffs.