615 So.2d 410 (1993)
James and Mary DOE, etc.
v.
The ROMAN CATHOLIC CHURCH FOR the ARCHDIOCESE OF NEW ORLEANS, et al.
No. 91-CA-0988.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1993.
Writ Denied April 30, 1993.
*412 Lawrence D. Wiedemann, Wiedemann & Wiedemann, and David W. Bernberg, Jacobs, Manuel & Kain, New Orleans, for plaintiffs, appellees.
Don M. Richard, Denechaud and Denechaud, and Ernest L. O'Bannon, Bienvenu, Foster, Ryan & O'Bannon, Paul S. Weidenfeld, Waltzer & Bagneris, New Orleans, for defendants, appellants.
Before KLEES, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
This case, which arises out of the sexual molestation of plaintiffs' 14-year-old daughter by defendant Daniel Vanno, the youth organization leader at her church who was acting as her algebra tutor at the time of the molestations, was remanded to this court by the Supreme Court for a decision on the merits. Doe v. Roman Catholic Church for the Archdiocese of New Orleans, 606 So.2d 524 (La. 1992). We had previously remanded the case to the trial court for retrial, after finding that the trial judge erroneously instructed the jury concerning the law on respondeat superior and vicarious liability. See Doe v. Roman Catholic Church of the Archdiocese of New Orleans, 602 So.2d 129 (La.App. 4th Cir.1992). The Supreme Court ordered us to decide the case, citing Gonzales v. Xerox Corp., 320 So.2d 163 (La. 1975), in which the court held that remand is not warranted by a trial judge's erroneous instructions to the jury if the appeal record is complete. Id. at 165.
The facts of this case are well-documented in our original opinion. Briefly, Vanno was an adult leader in the St. Andrew Catholic Church's New Youth Organization (SANYO); the victim was a member. When the victim's parents curtailed her activities in the organization because of academic problems, Vanno began tutoring her in algebra. All together, four tutoring sessions were conducted, two at Vanno's home, two at his SANYO office. While driving the victim home after all four sessions, Vanno made sexual advances toward the victim. Another incident, the most serious, occurred during a tutoring session in Vanno's SANYO office. Vanno pled guilty to criminal charges in connection with this case.
The victim's parents filed suit on their daughter's behalf against Vanno and several "church defendants," as well as a loss of consortium action on their own behalf. After a four-day trial, a jury returned a verdict finding Vanno liable for the victim's damages totalling $170,000, but absolving the church defendants from liability. Thereafter, the trial judge entered a judgment notwithstanding the verdict (JNOV), holding the church defendants vicariously liable for and solidarily liable with the defendant for the victim's damages. The plaintiff's motion for additur, Vanno's motions *413 for new trial and for remittitur, and the plaintiffs' motion for JNOV on the loss of consortium claim were all denied.
The following issues are pertinent: (1) whether the trial judge properly granted the JNOV holding the church defendants vicariously liable for and solidarily liable with Vanno for the victim's damages, (2) whether $170,000 is the correct measure of the victim's damages, (3) whether the plaintiffs are entitled to damages for loss of consortium, and (4) whether the trial judge admitted improper expert testimony.

I. JNOV

The Louisiana Supreme Court recently summarized the standard for appellate review of a trial court's granting of a motion for JNOV as follows:
The article controlling the use of a JNOV is LSA-C.C.P. Art. 1811. The article does not specify the grounds on which a trial judge may grant a JNOV. In Scott v. Hospital Service District No. 1, 496 So.2d 270 (La. 1986), we set forth the criteria to be used in determining when a JNOV is proper. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott, supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences and factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict could be reinstated.
Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 831-32 (La.1991). Thus, the pertinent question here is whether the evidence is so overwhelmingly in favor of the plaintiff on the vicarious liability issue that reasonable men could not have found in favor of the church defendants.
In her oral reasons for granting the JNOV, the trial judge stated as follows:
The testimony was abundantly clear that Mr. Daniel Vanno and his wife as the couple charged with responsibility for the catholic youth organization at the St. Andrew Church had access to these youngsters because of their responsibility and role; it was abundantly clear from the testimony that Mr. Vanno in fact had keys to the church buildings, and in one of the three instances where physical molestation took place it was in fact on church property in the building that Mr. Daniel Vanno was using for tutoring sessions. The other two instances I believe occurred in an automobile when he was transporting this youngster to and from tutoring. Based on all of this, the Court can find no distinction in the law for treating a volunteer differently from an employee. The Court's of the opinion that had Daniel Vanno been an employee of the Roman Catholic Church that the church will have exposure and liability, and even though he was an unpaid worker at the church, in fact a volunteer, this Court makes no distinction between a category of volunteer and worker, and for that reason will grant the motion for *414 judgment notwithstanding the verdict and enter the same verdict with reference to the several church defendants.
The church defendants claim that they are not vicariously liable for Vanno's acts because the doctrine is only applicable if a master-servant relationship exists. Alternatively, they assert that even when a master-servant relationship exists, liability may not be imposed upon the employer simply because of that relationship. The church defendants contend that the trial judge incorrectly charged the jury on this issue; they admit that the record contains no objection to the jury charge.

1. Improper Jury Instructions

The trial judge gave the following jury charge on the respondeat superior issue:
Masters and employees [sic] are answerable for the damages occasioned by their servants and overseers in the exercise of the functions in which they are appointed.
Masters and employees [sic] are responsible for not only their own negligent act, but for the act of their servant or employees. If you find that a servant of the Defendant was negligent, the master is equally as liable. The master need not be personally negligent, but can be held vicariously liable due to the fault of his servant.
The Doctrine of Respondeat Superior may be applicable to charitable organizations where the tort feasor was a volunteer unpaid at the time he was working for the charity. The Ecclesiastical and/or religious body may be held liable under this doctrine of Respondeat Superior.
On the basis of the above instruction, the jury concluded that the church defendants were not liable to the plaintiffs for Vanno's negligence. The trial judge, in granting the JNOV, came to the conclusion that reasonable men could not have found that the church defendants were not responsible for Vanno's actions.
In our original opinion, we found that the above jury instruction was improper because it failed to distinguish between "servants" and other types of agents, a distinction which is critical to determination of the application of respondeat superior vicarious liability under Louisiana law. Under the law, a principal is liable only for the torts of "servant" agents, not for the torts of "non-servant" agents. Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 751 (La.1987). Since the trial court's instruction indicated that the church defendants could be held liable for Vanno's actions if the jury found him to be an agent of any kind, without making the necessary distinction, we found that those jury instructions were inadequate. Moreover, we found that the trial judge's comments on granting the motion for JNOV indicated that she also failed to appreciate the applicable law. Those findings coupled together we felt necessitated reversal and remand. We are now under orders to decide this issue on the record as it stands.
However, on remand, we are convinced by the church defendants' arguments that the improper jury instructions did not contribute to the jury verdict. As stated above, the jury instructions on this issue allowed the jury to find that the church defendants were vicariously liable for and solidarily liable with Vanno simply on the basis of a finding that he was an "agent;" the jury was not required to find, under the instructions given by the trial judge, that Vanno was a "servant" agent in order to impose liability. Thus, the instructions were heavily weighted in favor of the plaintiffs and could only have been considered prejudicial to the defendants. Nevertheless, the jury found, even under this broader standard, that the church defendants were not liable for Vanno's actions, presumably because it concluded that Vanno's actions were not closely connected to the church defendants in time, place, and causation. The fact that the jury found in favor of the party to whom the instructions were prejudicial must be viewed with some significance in this case. A jury verdict should not be set aside on appeal because of improper jury instructions unless the improper instructions contributed to the verdict. Picou v. Ferrara, 483 So.2d 915, *415 918 (La.1986). Thus, our task on remand is simply to determine whether the trial court correctly granted the JNOV because no reasonable juror could have found in favor of the church defendants.

2. Vicarious liability

Under the jurisprudence, the church defendants can be held liable for Vanno's actions only if the plaintiffs proved two things: (1) that Vanno was the church defendants' "servant," and (2) that Vanno committed the tort in question in the course and scope of his duties as the church defendants' servant. See Rowell, 500 So.2d at 751; LeBrane v. Lewis, 292 So.2d 216, 217-18 (La.1974); Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (La.1968). Therefore, in determining whether the trial judge correctly granted the motion for directed verdict, we must consider whether the evidence in this case proves so strongly and overwhelmingly that Vanno was both a servant and within the course and scope of his duties at the time of the incident that reasonable jurors could not have concluded otherwise on either issue.

a. "Servant" status
The first question we must consider in determining whether the trial court properly granted the JNOV is whether the jury could reasonably have found that Vanno was not a servant of the church defendants.
This case involves the liability of a religious organization, which is a charity, for torts of a volunteer. Restatements (2d) of Agency § 225 states that a person "who volunteers services without an agreement for or expectation of reward may be a servant of one accepting such services." A charitable organization's right to control the activities of a volunteer is the determining factor in deciding whether the volunteer is in fact a "servant" of that charity. The right to control is a fact question, determined by the following questions: (1) the degree of contact between the charity and the volunteer, (2) the degree to which the charity orders the volunteer to perform specific actions, and (3) the structural hierarchy of the charity.
The record in this case contains very little evidence on these issues. The record reveals that Vanno and his wife became the "lead couple" of the SANYO group by permission or mandate from the other parents involved. Additionally, the record shows that one of the priests acted as the "spiritual head" of the SANYO organization; that priest attended meetings. The church defendants provided Vanno with an office at the SANYO building, to which he had access 24-hours a day; Vanno testified that that office was "almost like a second place to work." All of these facts impact upon the first factor listed above. The record is virtually devoid of evidence concerning the other two factors: the degree to which the church defendants ordered Vanno to perform specific actions and the structural hierarchy of the charity.
On the basis of the evidence presented in the record, we believe that the jury, had it been properly instructed on the difference between a volunteer and other agents, could reasonably have concluded that Vanno was not a servant for purposes of vicarious liability in this case.

b. Course and Scope
Even if the jury could reasonably have only determined that Vanno was a servant of the church defendants, the JNOV was properly granted only if the jury also could not reasonably have determined that Vanno was not within the course and scope of his duties as a servant of the church defendants when he committed the tort in question.
Determination of whether an activity is within the course and scope of a servant's duties to his master is dependent on whether the servant's tortious conduct was closely connected in time, place, and causation to his duties to the master as to be regarded as a risk of harm which can be fairly attributed to the master's business. LeBrane, 292 So.2d at 218.
Unquestionably, both sides in the instant case make viable arguments concerning *416 this issue. The plaintiffs naturally argue that Vanno's actions were within the course and scope of his employment, citing such evidence as the fact that Vanno met the victim through their mutual involvement with SANYO, the fact that Vanno agreed to tutor the victim in order to facilitate her participation in SANYO activities, and the fact that the most serious of the molestation incidents occurred in Vanno's SANYO office.
On the other hand, the church defendants cite the following evidence, which they say proves that Vanno was not within the course and scope of his SANYO duties when he sexually molested the plaintiffs' daughter: tutoring was not and had never been a part of the SANYO activities, Vanno had opportunity and in fact did molest the victim in locations other than the SANYO building, Vanno made all his arrangements for tutoring the victim with the victim and her parents, and none of the church defendants had reason to suspect that Vanno would use his position as a SANYO leader to molest members of the youth group. SANYO also argues the self-evident principle that sexual molestation of children is not one of the obvious duties of a church youth group leader.
Based on the facts outlined above, we cannot say that the evidence is so strongly and overwhelmingly in favor of the plaintiffs in this case that reasonable jurors could not have found in favor of the church defendants. Since the jury could have reasonably determined from the record evidence that Vanno was not within the course and scope of his duties when he sexually molested the victim, the trial court's decision to the contrary was incorrect.
Thus, the trial judge improperly granted the JNOV in favor of the plaintiffs. The record simply does not support a finding that the facts and inferences in this case point so strongly and overwhelmingly in favor of the plaintiffs that reasonable men could not have ruled in favor of the defendants, especially when all reasonable inferences and factual questions are resolved in favor of the defendants. See Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 831-32 (La.1991). Therefore, the trial judge was manifestly erroneous in granting the plaintiff's motion for JNOV. The trial court judgment on this issue is reversed, and the plaintiffs' case against the church defendants is dismissed.

II. Quantum:

Plaintiffs claim the quantum is too low, while the defendants claim it is too high. Plaintiffs rely on the strength of the trial testimony to justify their request for additur, contending that the victim's school performance deteriorated until she eventually dropped out, giving up an opportunity for a professional career. The plaintiffs also claim that the victim is entitled to damages for the breakup of her family.
Conversely, Vanno cites numerous cases which he claims indicate that the quantum is too high under the circumstances of this case. See Morris v. Yogi Bear's Jellystone Park Camp Resort, 539 So.2d 70 (La.App. 5th Cir.1989), writ denied 542 So.2d 1378 (La.1989); Smith v. Orkin Exterminating Co., Inc., 540 So.2d 363 (La.App. 1st Cir. 1989); Ballew v. Southland, 482 So.2d 890 (La.App.2d Cir.1986). All of the above-cited cases involved victims who were forcibly raped, yet received lower damage awards or awards only slightly higher than that given to the victim in this case. The defendant argues that the damages suffered by the victims in those cases were much more serious than those suffered by the victim in this case, and that the cases thus justify a reduction of the award in the instant case. Vanno also argues that the jury awarded damages to the victim for injuries which his actions did not cause.
The jury found Vanno "negligent" and awarded the victim $150,000 general damages and $20,000 special damages. Under the rule established by the Louisiana Supreme Court for appellate review of damage awards set by trial courts, a "reviewing court must look first, not to prior awards, but to the individual circumstances of the present case." Reck v. Stevens, 373 So.2d 498, 501 (La.1979). A damage award may not be disturbed in the absence of an *417 abuse of discretion. Bitoun v. Landry, 302 So.2d 278, 279 (La.1974). "The pertinent question in determining whether an abuse of discretion has occurred is whether the award of the trial court can reasonably be supported by the evidence and justifiable inferences from that evidence." Baker v. City of New Orleans, 555 So.2d 659, 662 (La.App. 4th Cir.1989), writ denied 558 So.2d 603 (La. 1990), citing Bitoun, 302 So.2d at 279.
Considering the individual circumstances of the present case, neither the trial transcript nor the jurisprudence suggests that the jury abused its discretion by awarding either an insufficient or excessive sum to the victim. Moreover, the jurisprudence cited by the defendant differs enough in circumstance from the instant matter to distinguish it. Thus, the award granted by the jury is affirmed.

III. Loss of Consortium

Plaintiffs assert that the trial judge erred in failing to grant their loss of consortium claim. Plaintiffs suggest that since a loss of consortium claim is derivative, they are automatically entitled to damages because their daughter was awarded damages. They also assert that the defendant presented no evidence to contradict their claim.
Jurisprudentially, numerous cases have left the award of loss of consortium to the discretion of the factfinder, and have affirmed zero verdicts to plaintiffs on consortium claims, even when the loss of consortium claim is derived from other claims for which damages were awarded. Scott v. Coastal Dragline Works, Inc., 525 So.2d 695 (La.App. 1st Cir.1988); King v. State Farm Mutual Automobile Insurance Co., 485 So.2d 578 (La.App. 4th Cir.1986), writ denied 488 So.2d 201 (La. 1986). Therefore, the plaintiffs' first argument on this issue has no merit.
The elements of a loss of consortium claim include loss of service, loss of love and affection, loss of society and companionship, loss of sexual relations, loss of support, and loss of felicity. Finley v. Bass, 478 So.2d 608 (La.App.2d Cir.1985). Obviously, the parents in this case are not entitled to recover many of these elements of damages. Additionally, the jury has wide latitude in its judgment on this issue and nothing in the record of this case indicates that the jury's findings are manifestly erroneous.
Testimony at trial by the victim and expert witnesses indicates that the breakup of the victim's relationship with her parents began soon after the molestation incidents. However, a significant amount of testimony indicates that the parents placed much of the blame for the occurrences on their daughter. The plaintiffs claim that the molestation caused them to treat their daughter in a significantly different manner, but the jury obviously concluded that this reaction was the parents' way of dealing with the situation and that their actions, not the molestation incidents themselves, caused the eventual breakdown of the family unit.
The record clearly supports the conclusion that the plaintiffs' own behavior contributed significantly to the eventual disintegration of their relationship with their daughter. The victim and her parents testified, as did various experts. The credibility of that testimony, as well as the determination of what lead to the breakup of the family, was decided by the jury and will not be disturbed on appeal. Even if the jury had concluded that some of the elements of a loss of consortium claim were proven by the plaintiffs, it could easily have concluded that the defendant's actions were not the cause of those damages. Thus, the trial court judgment on this issue is affirmed.

IV. Expert testimony

The defendant claims that the trial judge committed reversible error by admitting expert testimony that the plaintiff's future well-being was dependent upon a favorable jury verdict. Vanno claims that the expert testimony impermissibly placed responsibility on the jury to do more than render a fair and impartial verdict, saying that the expert testimony indicated to the jury that its "validation" or "failure to validate" the claims of the plaintiff would *418 play a significant role in her future mental health.
Defendant asserts that certain questions asked by plaintiff's attorney were improper, falling into a category of cases known as the "Golden Rule" cases. Defendant asserts that these cases substitute sympathy for judgment because the jury is asked to place itself in the position of a party and "do unto others...." The defendant cites the federal rule that "golden rule" testimony is improper, often constituting reversible error in the absence of a cautionary instruction by the court. Loose v. Offshore Navigation, Inc., 670 F.2d 493 (5th Cir. 1982); Ivy v. Security Barge Lines, 585 F.2d 732, 741 (5th Cir.1978), rev'd on other grounds 606 F.2d 524 (5th Cir.1979), cert. denied 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). Defendant also cites La.C.E. art. 403 for the proposition that even relevant evidence must be excluded if its probative value is substantially outweighed by unfair prejudice.
Defendant's assertion that La.C.E. art 403 prohibits this testimony because it is prejudicial is unfounded. This argument, as well as the "Golden Rule" claim made by the defendant, is meritless. Nowhere in the transcript is the jury asked to put itself in the place of the victim. The expert testified that "a strong support system from the community of validation of her as having her legitimacy, her authenticity, her truthfulness, would certainly help her recovery." This statement, taken out of context, may seem to play upon the sympathy of the jury. However, in light of all the expert testimony offered at trial and the scenario in which it was presented, this line of questioning was appropriate; it was not presented in a manner which would prejudice the jury. Rather, this was a question of credibility of the witness. At trial, the judge justified its decision to allow the testimony by stating that there was so much other evidence that the jurors would not be improperly swayed by that one comment. We agree. The trial court judgment admitting the expert testimony is affirmed.

V. Conclusion

Accordingly, the trial court judgment granting the JNOV in favor of the plaintiffs is reversed, and the plaintiffs' case against the church defendants is dismissed. In all other respects, the judgment of the trial court is affirmed.
REVERSED IN PART; AFFIRMED IN PART.