659 So.2d 820 (1995)
Janette Crow McADAMS
v.
LOUISIANA POWER & LIGHT COMPANY, et al.
No. 95-CA-126.
Court of Appeal of Louisiana, Fifth Circuit.
July 25, 1995.
*821 William E. William, Donaldsonville, for plaintiff/appellant.
Michael M. Noonan, Margaret Diamond, Patrick J. O'Cain, New Orleans, for defendants/appellees.
Before BOWES, DUFRESNE and WICKER, JJ.
WICKER, Judge.
This is a wrongful death action arising out of the 1988 death of Ralph McAdams, Jr., who was electrocuted when his paint roller's aluminum extension handle contacted a high-voltage line while he was painting a sign at a service station. His wife, Janette Crow McAdams, *822 filed this lawsuit, naming as defendants the Parish of Jefferson, Louisiana Power and Light Company (hereafter LP & L), owner of the power line, and Statewide Stations, Inc. (hereafter Statewide), owner of the service station and the sign. Jefferson Parish was dismissed from the suit, LP & L settled with the plaintiff and was released, and the case proceeded to trial against Statewide only. Following a five-day jury trial, the plaintiff's claims against Statewide were dismissed on the jury's finding that Statewide had not been negligent. Plaintiff has appealed. We affirm, for the reasons set forth below.

FACTS
In her petition plaintiff alleged that Statewide had been negligent in the following respects: failing to recognize the dangerous condition posed by the location of its sign in close proximity to the high-voltage power line and to take the necessary steps to reduce the danger; failing to warn petitioner's husband of the dangers associated with painting said sign when it is in close proximity to the power line; failing to insure that an LP & L representative was on site at the time plaintiff's husband was painting the sign to insure his safety; failing to move the sign to a location farther away from the power line; failing to insure that the minimum vertical and horizontal clearances were maintained between the sign and the power line; and failing to take all necessary precautions to avoid said accident.
The following facts were established at trial: McAdams was employed by General Maintenance Corporation. At the time he was killed, McAdams was working pursuant to a contract between General Maintenance and Texaco, Inc., painting an outdoor advertisement sign at a Texaco service station at Lapalco Avenue and Manhattan Boulevard in Harvey, Louisiana.[1] The sign was located near a high-voltage power line. On the day of the accident, McAdams was using a forty-foot aluminum extension ladder and a roller on a long aluminum pole to paint the sign. Although there were no eyewitnesses to the accident, the physical evidence indicates that McAdams placed the ladder against one of the sign's upright support posts, climbed the ladder, and proceeded to paint the sign with the roller on the aluminum handle. The metal extension pole contacted the power line and electrical current traveled through the pole, through McAdams' body, and down the ladder into the ground, killing him.
The power line had been installed by LP & L in 1980 and had remained in place up to the time of the accident. Statewide Stations built the Texaco service station in 1982 and erected the sign on its own land 59 ½ inches from LP & L's uninsulated 13.8 kilovolt power line.
The defense read into the record the deposition of Joachim Pantilides, secretary-treasurer of General Maintenance, who had died by the time of trial. He testified that McAdams had violated company safety rules by going up the ladder with a metal extension pole and that all employees had been warned against such conduct. He said that the company owned a lift truck designed to be used at these types of sites, with a platform to raise the painter up so that a ladder and roller extension will not be necessary. He stated that an alternative method would have been for the worker to use a block-and-tackle and a bosun's chair to hoist himself up and down the sign, and that each truck General Maintenance sends to a jobsite is stocked with the necessary equipment, including a bosun's chair. In addition, fiberglass painting poles were available; in fact, after the accident to McAdams, the job was finished by using a fiberglass painting pole. He also testified that McAdam's foreman, Bob Shurley, had received training in OSHA safety regulations about a year before the accident.
In contrast, Shurleywho was not only McAdams' supervisor but also his cousin testified that the company did not provide training in proper methods of painting near power lines. Shurley admitted it was the *823 workers' common practice to ignore warning labels on aluminum ladders such as that used by McAdams, which cautioned against using the ladder around electric lines.
Anastasios Pantilides, president of General Maintenance, testified it was company policy to paint signs by using lift trucks from which the worker could apply paint without needing an extension handle for the paint roller. Although a lift truck was available on the day of the accident, it was not used; there was conflicting testimony indicating that shrubbery around the base of the sign would have made use of the truck unfeasible. He stated that General Maintenance had no real training for its employees in working around power lines.
There was expert testimony to the effect that Occupational Safety and Health Administration (OSHA) regulations require a ten-foot clearance for workers near power lines, but that those regulations apply only as between employers and employees. There also was expert testimony that the clearances between the sign and the power line violated National Electric Safety Code rules, but that those rules apply to the power company installing the lines, not to later constructions built near power lines. Finally, it was established that the clearance between the power line and the sign complied with the parish building code.
The jury's verdict resulted from the first jury interrogatory, which was, "Do you find that plaintiff has proven, by a preponderance of the evidence, that Statewide Stations was negligent or at fault in its placement of the Texaco sign at issue and thereby created an unreasonably dangerous condition?" The jury responded "no," and thus was not required to answer the rest of the interrogatories.

ISSUES
Plaintiff makes the following assignments of error:
I. The trial judge failed to charge the jury correctly, despite plaintiff's objection, giving the proximate cause charge in a power line contact case rather than the accepted and required duty risk analysis.
II. The trial judge, over the objection of plaintiff, gave confusing and incorrect charges on the relevancy and how the jury could consider the Occupation Safety and Health Administration standards.
III. The [trial judge erred in allowing the] introduction of a corporation deposition of General Maintenance Corporation, when the President of the Company testified and was cross-examined at the trial.
IV. The verdict is against the law and weight of the evidence.
We shall address Assignments No. II and III first and shall consider Assignments No. I and IV together. We set forth the issues as phrased by plaintiff.
Can OSHA regulations be considered by the jury to determine the safety of a workplace even though the injured party is not an employee?
The trial judge gave the following instructions concerning OSHA regulations:
You have heard references to regulations promulgated by OSHA, the Occupation Health and Safety Administration [sic]. OSHA regulations impose duties only on employers and employees. OSHA regulations do not impose any legal duties on a non-employer like Statewide/Texaco in this case. Consequently, while you may consider conformance with or violation of OSHA regulations in determining whether any fault existed on the part of Ralph McAdams, his co-workers and his employers, I charge you to remember that OSHA regulations are not relevant to the plaintiff's claims against Statewide/Texaco. You should not consider conformance with or violation of OSHA regulations in determining whether any fault existed on the part of Texaco/Statewide.

You may, however, consider whether Ralph McAdams and his employer, General Maintenance, violated any applicable OSHA regulations in determining whether they breached the standard of care that applies to everyone, to exercise reasonable care under the circumstances. OSHA regulations apply to both employers and employees. *824 OSHA regulations required that employers shall furnish to their employees a place of employment that's free from recognized hazards that are likely to cause death or serious physical harm to employees. OSHA regulations also provide that employees shall comply with the regulations which are applicable to his own actions and conduct. Should you find that Ralph McAdams or General Maintenance violated applicable OSHA regulations, you may take this into consideration in deciding whether any negligence on their part caused or contributed to the accident.

Now, while OSHA standards primarily apply to the employer/employee relationships, they are certainly relevant to the safety of the workplace even though Mr. McAdams was not an employee of Texaco. And while the National Electric Safety Code primarily applies to power companies, it is certainly relevant to the safety of a workplace even though Mr. McAdams was not an employee of Texaco. [Emphasis added.]
Plaintiff asserts that the trial judge's charges regarding OSHA regulations were confusing and misleading to the jury. Specifically, plaintiff points to the statements emphasized in the quotation above. Plaintiff contends that the second statement was correct, but that the first statement was incorrect and in conflict with the second, was totally confusing to the jury, and is reversible error.
Plaintiff asserts that Statewide knew that the sign required maintenance and that there were economical and practical places to put the sign further away from the power lines. No one contacted LP & L about moving, deenergizing or insulating the power lines. Plaintiff contends the location of the sign violated standards of the National Electric Safety Code (NESC) and OSHA regulations. Plaintiff admits those standards are not mandatory here, but contends they are relevant and the jury should have been allowed to consider them.
Defendant, however, argues there were no applicable standards that establish liability and that the placement of the sign five feet from the power line was in compliance with parish building code requirements.[2] Under its contract with Statewide, General Maintenance chose the equipment to be used and decided how specific tasks would be done, and the General Maintenance foreman supervised the workers. Defendant asserts that General Maintenance agreed to follow the safety provisions of the Army Corps of Engineers' manual, which prohibits operations near overhead transmission lines unless the power has been shut off or unless the workers' equipment is incapable of coming within a minimum clearance of energized lines. General Maintenance failed to comply with those safety provisions.
We agree that the repeated use of the term "relevant" in the two challenged instructions was confusing. We do not find it reversible error, however. Both instructions are correct statements of the law. OSHA regulations govern only employer-employee conduct and do not create a private cause of action by a non-employee. Manchack v. Willamette Industries, Inc., 621 So.2d 649, 652 (La.App. 2nd Cir.1993), writ denied, 629 So.2d 1170 (La.1993). At the same time, a plaintiff may offer a statute or regulation as evidence of a defendant's negligence even when that statute or regulation cannot be used to establish negligence per se. Id.
There was no employment relationship between the decedent and the defendant in this case. Further, OSHA's installation safety requirements for electrical equipment do not apply to existing permanent installations that were in place before construction activity commenced. 29 C.F.R. § 1926.402(a). In addition, Statewide was not required to exercise the heightened level of care required of utility companies, which are in the business of transmitting electricity. As defendant points out, the NESC is applicable only to erection of power lines, not to placement of signs. Further, the NESC defers to local administrative authorities to provide standards for clearances between power *825 lines and other installations. The jury's finding was reasonable and not clearly wrong.
We find no reversible error in the trial court's instructions regarding the safety regulations. The placement of the sign did not violate any applicable standards. Our own reading of the evidence convinces us that review of the OSHA and NESC regulations was relevant to the liability of General Maintenance and LP & L rather than of Statewide. The plaintiff had the burden of showing the sign created a risk that was unreasonable under the circumstances particular to this case. We find no manifest error in the jury's conclusion.
When a[n] individual gives a corporation deposition of an existing corporation, then dies, can this deposition be read to the jury?
Plaintiff states that, over her objections, the trial judge admitted into evidence and allowed the jury to hear reading of the deposition of Joachim Pantiledes, who appeared as the corporate representative of Statewide Stations at the time he gave the deposition. By the time of trial, however, Joachim Pantiledes had died. The corporate president, Anastasios Pantiledes, not only appeared and testified at the trial, but also was the person who had compiled the information used for the deposition and who visited the site of the accident immediately before and after the accident. Plaintiff contends that since the corporation was available to testify through Anastasios Pantilides, admission of Joachim Pantiledes' deposition was error.
Defendant points out that plaintiff cites no authority for this contention and that, in fact, the Code of Civil Procedure permits introduction of a deposition when the witness is unavailable. La.Code Civ.P. art. 1450(A)(3)(a). Defendant also argues that Joachim Pantiledes was the only person designated by the corporation to testify on its behalf; consequently, following his death it was proper to allow his deposition into evidence.
Since Joachim Pantiledes was unavailable to testify at trial, his deposition was admissible. Further, as defendant also points out, plaintiff has demonstrated no prejudice resulting from the reading of the deposition into evidence.
In an electrical contact case, should a duty risk charge or a proximate cause charge be given to the jury?
Using the proper law, under the facts of this case, should the judgment be reversed and damages be determined?
The challenged instruction was as follows:
As to proximate cause, to prove proximate cause, the plaintiff, Mrs. McAdams, must show that it's more likely true than not true that the negligence or fault of the defendant, Texaco, if proven, played a substantial part in bringing about or actually causing the injury claimed by her. The proximate cause of an injury or an accident is the primary or moving act or acts which produces the injury complained of. It's well settled that unless an omission or an act of commission can be shown to be a proximate cause of an injury, it cannot be the basis for an award of damages. This does not mean that the law recognizes only one proximate cause of injury or damage consisting of only one factor or the conduct of only one person. On the contrary, many factors or things or the conduct of two or more persons may operate at the same time independently or together to cause injury or damage. And in such a case, each may be a proximate cause of the injury or damage.
Statewide contends the judge erred in failing to give its requested charge: "When you multiply the likelihood that an accident will happen times the seriousness of an injury, if it is greater than the burden of preventing the accident, the risk is unreasonable and the failure to take such precautions is negligence." This charge is taken from Dobson v. Louisiana Power & Light Co., 567 So.2d 569, 575 (La.1990), which describes the statement as "the `Hand formula,' the `Learned Hand test' or the `risk-benefit' balancing test." Id.
During deliberations the jury sent in a note which contained the word "proximate" followed by a question mark. In response the judge reread to the jury the definition of proximate cause. Statewide contends the jury's query indicates confusion and that the *826 court's giving of the proximate cause charge rather than plaintiff's requested duty-risk charge was reversible error.
Appellate courts must exercise great restraint before overturning jury verdict on the suggestion that instructions were so erroneous as to be prejudicial. Cuccia v. Cabrejo, 429 So.2d 232, 235 (La.App. 5th Cir.1983), writ denied, 434 So.2d 1097 (La. 1983). The pertinent question is whether the jury was misled to such an extent as to prevent it from doing justice. Id. A jury verdict should not be set aside on appeal because of improper jury instructions unless the improper instructions contributed to the verdict. Doe v. Roman Catholic Church, 615 So.2d 410, 414 (La.App. 4th Cir.1993), writ denied, 618 So.2d 412, 413 (La. 1993).
In addition to the proximate cause charge, the trial judge here instructed the jury,
A primary issue in this case is whether the placement of the Texaco sign created an unreasonably dangerous risk. You should remember that the mere fact that a thing creates a hazard does not necessarily mean that it is unreasonably dangerous. The existence of a condition which presents an unreasonable risk of harm cannot be inferred solely from the fact that the accident occurred. The key word is "unreasonable" and the plaintiff must show that the risk created was unreasonable under all the circumstances.
"[T]he determination of whether a risk is `unreasonable' is context specific...." Celestine v. Union Oil Company of California, 94-1868, p. 5 (La. 4/10/95); 652 So.2d 1299, 1305. This instruction adequately covered the duty-risk aspect of the case.
Further, as noted above, the jury answered "no" to the first interrogatory, regarding whether Statewide created an unreasonably dangerous risk. Accordingly, they were not required to address whether any such risk was a proximate cause. The charge, even if improper, did not contribute to the verdict. We find the trial court's instructions were correct and did not mislead the jury to the extent of doing an injustice.
For the foregoing reasons, the judgment is affirmed. The parties are each to pay their own costs for this appeal.
AFFIRMED.
NOTES
[1] During the trial counsel and the trial judge referred to Statewide as "Texaco." Although Texaco, Inc. was not a party to the suit, Texaco leased the premises and operated the service station. Statewide Systems was the owner of the property. The parties stipulated that for purposes of these proceedings, Statewide and Texaco are one and the same.
[2] The parish building code requires a three-foot horizontal clearance between signs and electric power lines. Jefferson Parish Building Code, Ch. 46, art. 4602(a).