500 So.2d 748 (1987)
Ray and Annette ROWELL
v.
CARTER MOBILE HOMES, INC., et al.
No. 86-C-0381.
Supreme Court of Louisiana.
January 12, 1987.
Rehearing Denied February 12, 1987.
*749 Samuel Cashio, Jr., for applicant.
William Brough, Mark Surprenant, Adams & Reese, J. Michael Johnson, McGlinchey, Stafford, et al., Caleb Didriksen, III, Monroe & Lemann, Richard McShan, E. Clark Gaudin, Daniel Atkinson, H.F. Foster, III, Bienvenu, Foster, et al., for respondent.
DENNIS, Justice.[*]
The question in this case is whether a bank, which authorized a mobile home dealer to act as its undisclosed mandatary in reselling a repossessed mobile home, is liable for the buyer's personal injuries caused by the dealer's negligent repair of the mobile home floor. The trial court held the bank strictly liable as a mobile home manufacturer. The court of appeal reversed, holding that the bank was not strictly liable as a manufacturer, that instead the bank was liable as an undisclosed principal for the negligence of its mandatary, the dealer, but that the bank's obligation had been extinguished by a prior release which the plaintiffs had granted to the dealer. We affirm, but for different reasons. Because there was only an undisclosed principalmandatary relationship between the bank and the dealer, and not a master-servant relationship, the bank is not liable for the negligent physical acts of the dealer's employees in repairing the home. Moreover, the bank is not responsible for strict products liability in tort or warranty because it did not control or supervise the repairs, hold itself out as a manufacturer or dealer or vouch for the product, was not a professional vendor or merchant of the mobile homes, and was not aware of the defect before the injury. Because the bank is not liable under any legal theory, the questions raised in connection with the prior release are moot.

Facts
The court of appeal's succinct and accurate statement of the facts has not been disputed and is adopted herein. Due to a default in loan payments, Louisiana National Bank (LNB) initiated foreclosure proceedings in August of 1981 on a 1977 Tidwell Dorado mobile home upon which it held a chattel mortgage. LNB eventually acquired title to this mobile home at the sheriff's sale. It then requested that Carter Mobile Homes, Inc. (Carter), the original *750 vendor, pick up the mobile home and take it to Carter's lot in Greensburg for resale. This was the customary arrangement between LNB and Carter with respect to mobile homes repossessed by LNB. It was also part of their customary arrangement for Carter to attend to the performance of any repairs which might be necessary on mobile homes which had been repossessed by LNB. LNB relied entirely on Carter's expertise in this area.
In November of 1981, plaintiffs Ray and Annette Rowell were interested in purchasing a used mobile home. They visited the Carter lot in Greensburg for this purpose, but failed to find a suitable home on this occasion. On a second occasion, Mrs. Rowell returned alone and was shown the 1977 Tidwell mobile home repossessed by LNB. She was not informed of LNB's ownership of this mobile home.
Mrs. Rowell expressed interest in this mobile home, but noted certain areas of the floor were in very poor condition and badly in need of repair. The Carter salesperson assisting Mrs. Rowell assured her this flooring would be repaired prior to sale.
Sometime thereafter this mobile home was repaired by and/or under supervision of Mr. Calvin Cernich, an employee of Carter. These repairs were authorized by LNB under its customary arrangement with Carter. There is no indication LNB was actually involved or gave any specific instructions as to what repairs were to be performed on this particular mobile home. Cernich testified he generally either received his instruction from Carter or exercised his own discretion as to what repairs were necessary on a particular mobile home. He had no independent recollection of the repairs performed on the mobile home purchased by plaintiffs. However, the invoice prepared by him for these repairs indicates flooring in the living room, kitchen and bathroom was replaced. The charge for these repairs was $1,105.00 for labor and $369.21 for parts, a total of $1,474.21.
On November 23, 1981, after completion of the repairs, Carter executed a bill of sale in Greensburg purportedly transferring title of this mobile home to plaintiffs for a cash price of $10,500.00. Plaintiffs gave Carter a $1,000.00 cash down payment and executed a promissory note made out to the order of bearer for the remaining balance. They also executed a chattel mortgage on the mobile home, which listed Carter as the mortgagee/seller.
Shortly after these papers were signed, Carter contacted LNB's collection manager, Mr. Philip Stanley, in Baton Rouge and informed him of the execution of these documents. Mr. Stanley then had a bill of sale drawn up in authentic form, dated November 23, 1981, transferring title of the mobile home from LNB to Carter for a stated consideration of $10,500.00, receipt of which was acknowledged. On November 29, 1981, Carter assigned to LNB both the chattel mortgage and promissory note executed by plaintiffs. On December 8, 1981, Carter made out a check to LNB for $1,000.00, representing the down payment made by plaintiffs.
Upon initially taking possession of the mobile home, plaintiffs noted nothing amiss with the floors, which appeared to have been satisfactorily repaired. However, within two weeks plaintiffs began noticing weak spots in the floor, especially in the living room area. Mrs. Rowell testified she called Carter regarding this problem on several occasions, but no one was ever sent out in response. On January 5, 1982, as Mr. Rowell entered through the front door of the mobile home his left leg went completely through the floor, causing him to fall in a straddled position and severely injure his back. The point at which Mr. Rowell fell was not one of the weak spots previously noticed by plaintiffs.

Procedural History
The plaintiffs, Ray and Annette Rowell, brought suit for damages against the defendants, LNB, Carter and its insurers, Northeastern Fire Insurance Company of Pennsylvania, Commercial Union Insurance Company and Guaranty National Insurance Company; Tidwell Industries, Inc., the original manufacturer of the mobile home; *751 and Calvin Cernich. LNB filed a third party demand, naming Carter, Cernich and Tidwell as third party defendants, for any amount for which it might be liable to plaintiffs on the main demand. Prior to trial, plaintiffs settled with and released Tidwell, Carter, and Carter's insurers; subsequently, these defendants were dismissed from the main demand. LNB filed an amended answer, claiming its entitlement to a reduction in any judgment rendered against LNB in proportion to the responsibility of the released defendants. Upon oral motion, the dismissal of LNB's third party claim against Carter and its insurers was granted.
The trial proceeded against the two remaining defendants, LNB and Cernich. The trial court rendered judgment in favor of plaintiffs against LNB in the amount of $469,546.12; however, the trial court reduced recovery by 50% because of the prior release of Carter, which the trial court considered was solidarily liable with LNB for the plaintiffs' damages. The judgment also dismissed both the plaintiffs' claims and LNB's third party demands against Cernich.
LNB appealed, contending the trial court erred in holding it liable for plaintiffs' damages as a manufacturer or under any other legal theory. The court of appeal reversed, 482 So.2d 640, holding that the bank was not liable as a manufacturer of the mobile home, that the true nature of the relationship between LNB and Carter was that of undisclosed principal and mandatary, that LNB was legally bound for any fault of Carter as regards repairs to the mobile home, and that, since Carter's debt was satisfied by plaintiffs' settlement with Carter, plaintiffs were not entitled to any recovery against LNB.
We granted plaintiffs' application for certiorari because there appeared to be possible error in the court of appeal's application of our decision in Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981) and in its conclusion as to the effect of a servant's settlement upon the solidary liability of his master. These questions cannot be addressed in this case, however, because a proper application of the correct legal precepts render them abstract or purely academic. Because there was no master-servant relationship, but only a principal-mandatary relationship, between the bank and the dealer, the bank cannot be held for the negligent physical acts of the dealer or its employees. Therefore, we set to one side without deciding the questions raised by the court of appeal opinion with regard to solidarity and vicarious liability.

Merits
1. A principal is not liable for the physical torts of a non-servant agent.
The court of appeal correctly found that the relationship between LNB and Carter was that of principal and mandatary. But the appellate court erroneously inferred from this that LNB was legally bound for any fault of Carter as regards repairs to the mobile home.
A master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a non-servant agent. Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). Liability for the negligent and tortious acts of another does not flow simply because of a principalagent or principal-mandatary relationship. Civil Code article 2985 et seq., titled "Of Mandate", define the nature of the contractual relationship and the obligation of the parties under a mandate, but do not attempt to fix liability for the tortious acts of a mandatary. Id. Only when the relationship of the parties includes the principal's right to control physical details of the actor as to the manner of his performance which is characteristic of the relation of master and servant does the person in whose service the act is done become subject to liability for the physical tortious conduct of the actor. Id. citing Civil Code articles 176, 2315, 2317, 2320; Cf. Restatement (Second), Agency, § 250 (1957); W.A. Seavey, Law of Agency § 91 (1964).
*752 The trial and appeals courts made no findings of fact as to whether LNB had the right to control the physical conduct of Carter's employees. The record is clear, however, that LNB exercised no control over Carter's sales contacts, tactics or methods and absolutely no influence or supervision over the repair or renovation of the mobile home. There was no agreement between LNB and Carter as to the price to be asked for the mobile home. Carter received no fee or compensation for selling the home, its only motivation being to reinforce the bank's willingness to finance Carter's new mobile home sales. The only control which LNB exercised over Carter was that it retained title to the mobile home until Carter completed the sales transaction with a buyer. LNB could not determine the identity of the prospective purchaser, the time to be spent to renovate and repair the home or to promote and effectuate the sale, the nature or methods of the preparation and repair of the home for sale, or any of the details of the Carter employees' physical conduct in effecting mobile home preparation, repair and sale. Consequently, we conclude that Carter was not the servant of LNB, and that LNB was therefore not liable for the physical negligence of Carter or its employees in repairing the mobile home.
2. A seller, who neither knew nor should have known of the defect of the thing he sells, is not answerable to the buyer in damages, unless he is a manufacturer, assembler, seller who vouches for the product by holding it out as his own, or a professional vendor or merchant.
The court of appeal correctly concluded that LNB was not liable as a manufacturer and implicitly decided that the bank was not strictly liable in any other respect. We agree but think the questions involved deserve further analysis.
a. Strict products liability in tort
Under strict products liability in tort, upon proof of the essential elements of a plaintiff's case, liability attaches to any manufacturer or supplier of a product, including the maker of a component part of the final product, Spillers v. Montgomery Ward Co., 294 So.2d 803 (La.1974); Radalec Inc. v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830 (1955), the assembler of parts supplied by others, Spillers v. Montgomery Ward, supra, the seller who vouches for the product by holding it out as his own, Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978); Penn v. Inferno Mfg. Corp., 199 So.2d 210 (La.App. 1st Cir.1967), writ den., 251 La. 27, 202 So.2d 649 (1967), and professional vendors or merchants who are presumed to know of the defects of their wares. Chappuis v. Sears Roebuck & Co., supra; See Morrow, Warranty of Quality: A Comparative Survey, 14 Tul.L.Rev. 529, 539 (1940); Crowe, The Fishbone in the Pelican's Throat or `The Same Damn Place You Got that Battleship', 19 Loy.L.Rev. 357 (1973); Cf., Restatement of Torts, § 402A(1)(a) (1965); U.C.C., § 2.314 (1978).
LNB does not fall within any of the categories of defendants which may be held liable under strict products liability in tort. Because LNB did not have the right to control, and in fact exercised no control or supervision over, the repair and preparation of the mobile home for sale, the bank cannot be characterized as a manufacturer, maker of a component part, or an assembler of parts supplied by others. LNB did not vouch for or hold the home out as its own but required that the dealer, Carter, acting as an undisclosed mandatary, decide and control all details of the repair and sale. Moreover, LNB was not a professional vendor or merchant because it was not in the business of selling mobile homes. The bank only made occasional sales of homes which it was forced to acquire in foreclosures.
b. Strict liability in warranty
The seller who neither knew nor had reason to know of the vice of the thing, is not liable in warranty for damages, but only for the restitution of the price and *753 expenses of the sale. LSA C.C. art. 2531. Cox v. Lanier Business Products, Inc., 423 So.2d 690, 693 (La.App. 1st Cir.1982); writ den., 429 So.2d 129 (La.1983); Purvis v. Statewide Trailer Sales, Inc., 339 So.2d 403 (La.App. 1st Cir.1976); Greenburg v. Fourroux, 300 So.2d 641 (La.App. 3d Cir. 1974), writ den., 303 So.2d 181 (La.1974); Savoie v. Snell, 213 La. 823, 35 So.2d 745 (La.1948). The manufacturer is presumed to know of the vices in the things he makes, Philippe v. Browning Arms Co., 395 So.2d 310, 318 (La.1980); Rey v. Cuccia, 298 So.2d 840, 845 (La.1974); Radelec, Inc. v. Automatic Firing Corp., supra; Weber v. Fidelity & Casualty Ins. Co., 259 La. 599, 250 So.2d 754 (1971), and the professional vendor or merchant is presumed to know of the vices in the things he sells, whether or not he had actual knowledge of them. See Chappuis v. Sears Roebuck Co., supra.
The evidence reflects that LNB was not aware of the defects in the floor of the mobile home before the accident occurred. LNB was not in the mobile home business and only made occasional sales of repossessed units. LNB reasonably entrusted the repairs to Carter who was a competent, reputable and financially responsible mobile home dealer and repairer. Accordingly, since LNB was not a manufacturer or professional vendor or merchant, and did not know or have reason to know of the defects, it cannot be held liable for damages in warranty.
The court of appeal thought it significant that a Carter employee had assured plaintiffs that the flooring in the mobile home would be repaired prior to sale. However, this representation added nothing to the warranty implied by law that the thing sold shall be fit for the purpose intended. LSA C.C. art. 2520. Breach of this warranty gives rise to an action in redhibition, but not damages, unless the seller was in bad faith. Id., LSA C.C. art. 2545. Likewise, a declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, may only give rise to redhibition. LSA C.C. art. 2529. An action in damages does not arise unless the seller knows it does not possess that quality. LSA C.C. art. 2547. In this case there is no evidence that Carter or its employees, who made extensive repairs to the mobile home, knowingly concealed defects or misrepresented any of its qualities. Consequently, even though a knowing misrepresentation by a seller's agent may subject him to damages in connection with an action in redhibition, there is no evidence of fraud or bad faith on the part of Carter or its employees which may be attributed to LNB in this case.
For the reasons assigned, the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[*] Honorable Charles S. King, Court of Appeal, Third Circuit, sitting for Justice Luther F. Cole, recused.