|, KIRBY, J.,
dissents with reasons.
Under the doctrine of respondeat superior expressed in La. C.C. art. 2320, “[mjasters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” Urbeso v. Bryan, 583 So.2d 114, 116 (La.App. 4 Cir.1991). Under this doctrine, a master or employer is liable for the tor-tious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a non-servant agent. Anderson v. New Orleans Public Service Inc., 583 So.2d 829 (La.1991); Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 751 (La.1987). Liability for the negligent and tortious acts of another does not flow simply because of a principal-agent or principal-mandatary relationship. Rowell at 751. Rather, when the relationship of the parties includes the principal’s right to control physical details of the actor as to the manner of his performance, which is characteristic of the relation of master and servant, only then does the person in whose service the act is done become subject to liability for the physical tortious conduct of the actor. Id.; Daniels v. Dauphine, 557 So.2d 1062, 1065 (La.App. 2 Cir.1990).
The same basic rule applies to independent contractors generally. Daniels, 557 So.2d at 1065. Generally, a principal is not liable for the offenses committed | ¡,by an independent contractor while performing its contractual duties. Two exceptions to this general rule exist: (1) where the work is ultra hazardous; and (2) if the principal reserves the right to supervise or control the work of the independent contractor. Davenport v. Amax Nickel, Inc., 569 So.2d 23, 28 (La.App. 4 Cir.1990). The most important inquiry is whether the principal retained the right to control the work. In applying this test, it is not the supervision and control which is actually exercised which is significant; .the important question is whether, from the nature of the relationship, the right to do so exists. Hillman v. Comm-Care, Inc., 01-1140, p. 12 (La.1/15/02), 805 So.2d 1157, 1164-1165 citing Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972).
In support of the motion for summary judgment in the present case the RTA introduced its contract with Washington and the deposition of Karen Kélly, a past employee of Washington. Ms. Kelly’s deposition was taken in connection with an unrelated lawsuit involving a similar dispute between the RTA and Washington. Ms. Kelly explained in her deposition the following pertinent facts: 1) Washington owned the vehicles used in the cab service; 2) the drivers were salaried Washington employees; 3) Washington controlled the drivers’ leave and overtime; 4) Washington controlled the hiring and firing of the drivers; 5) the RTA provided the daily manifest, but Washington made up the routes for the drivers.
*160 In opposition to the motion for summary judgment, Richardson relied only on the contract and Kelly deposition to demonstrate RTA’s control over the operations of Washington. Otherwise, Richardson presented no independent evidence in opposition to the motion for summary judgment. In support of his argument, Richardson points to the following requirements as stated in the contract: 1) the RTA provides Washington with the name, address, and ultimate destination of the passenger; 2) the Washington vehicle was required to have an RTA logo affixed to the vehicle while the vehicle was in service to the RTA; 3) the ^passenger cannot directly contract with Washington; 4) the driver is required to act exclusively at the direction of the RTA dispatcher; 5) the RTA supplies the driver with a two-way radio; 6) the driver is required to fill out an RTA log sheet; 7) Washington is required to deposit the fares into an RTA bank account; 8) the RTA requires the driver undergo specific training; and 9) the RTA requires that a driver be fired if they test positive for drugs.
The contract between the RTA and Washington dictates many requirements under which the Dollar-A-Ride program was to operate. It is clear, however, that these requirements do not reflect operational control over Washington by the RTA as argued by Richardson. Notwithstanding the requirements imposed by the contract, Richardson presented, no evidence that RTA had the power or right to control the manner in which Washington carried out its operations. According to my review of the record, I find that , the RTA is entitled to summary judgment as a matter of law and would affirm the granting of the motion for summary judgment in favor of the RTA.