STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0892

LAFAYETTE STEEL ERECTOR, INC., d/b/a LSE CRANE AND
TRANSPORTATION, AND IC RIGGING, LLC

VERSUS

G. KENDRICK, LLC, LOW LAND CONSTRUCTION CO., INC.,
UNITED BULK TERMINALS DAVANT, LLC, UNDERWRITERS
AT LLOYD'S, LONDON, AND ATLANTIC
SPECIALTY INSURANCE COMPANY

Judgment rendered: __AUG 2 9 2023__

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 660341

The Honorable Wilson E. Fields, Judge Presiding

* * * * *

Corey Patrick Parenton        Attorneys for Cross-Claimants/Appellants
Rufus Carrollton Harris, III   Low Land Construction Co., Inc.,
Jason R. Kenney               and Atlantic Specialty Insurance
James A. Crouch, Jr.          Company
Metairie, Louisiana

Jake P. Skaggs                Attorneys for Intervenor/Appellant
Timothy Braden Riley          Mitsui Sumitomo Insurance Company
Houston, Texas                of America

James Michael Dill            Attorneys for Plaintiff/Appellant
Michael C. Wynne              Lafayette Steel Erector, Inc., d/b/a
Lafayette, Louisiana          LSE Crane and Transportation

Stephen F. Butterfield        Attorneys for Defendant/Appellee
Ryan M. Tucker                G. Kendrick, LLC
New Orleans, Louisiana

McClendon, J. concurs in the Result Reached by the majority.

Katherine Lynch
Ross M. Molina
Jill S. Willhoft
Donald G. Cassels, III
New Orleans, Louisiana

Attorneys for Defendant/Appellee
Certain Underwriters at Lloyd's London

\* \* \* \* \*

**BEFORE: McCLENDON, HOLDRIDGE, AND GREENE, JJ.**

**HOLDRIDGE, J.**

Lafayette Steel Erector, Inc., d/b/a LSE Crane and Transportation (LSE), Low Land Construction Co., Inc., Atlantic Specialty Insurance Company, and Mitsui Sumitomo Insurance Company of America (Mitsui) appeal a summary judgment rendered in favor of G. Kendrick, LLC (Kendrick) and Certain Underwriters at Lloyd's, London (Underwriters),[1] dismissing their claims with prejudice. For the following reasons, we affirm in part and reverse in part the trial court's grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

On August 11, 2017, LSE filed a petition for damages against Kendrick, Low Land, United Bulk Terminals Davant, LLC (United Bulk), Underwriters, and Atlantic Specialty Insurance Company.[2] In its petition, LSE asserted that in May of 2017, it was subcontracted by Low Land to provide services on a demolition project at a plant owned by United Bulk in Davant, Louisiana. Kendrick was the general contractor on the project.[3] On June 13, 2017, a crane owned by Low Land (hereinafter referred to as the Low Land crane) was being used in the demolition of a structure when it fell and struck a crane owned by IC Rigging, LLC, and leased to LSE (hereinafter referred to as the LSE crane). The Low Land crane was being operated by Jason Guidry, an employee of Low Land for approximately fifteen years. The LSE crane was being operated by Jason Robichaux, an employee of LSE. The cutter on the project was David Hernandez, the owner and operator of LDH Recycling, LLC (LDH). The accident caused extensive damage to the LSE crane.

---

[1] LSE's original petition apparently improperly named this defendant as "Underwriters at Lloyd's, London."

[2] We note that the petition also named IC Rigging, LLC as a plaintiff.

[3] Kendrick was contracted by United Bulk to remove its Krupp stacker reclaimer at its facility. Due to its large size, demolishing the reclaimer required the use of two cranes and a cutter to dismantle portions of the structure. Kendrick did not employ cutters and did not own or operate any cranes. Therefore, Kendrick subcontracted Low Land to provide cranes and LDH Recycling, LLC to provide the cutter necessary to complete the demolition project.

In its petition for damages, LSE argued that the accident was caused by the negligence of Kendrick.

On October 2, 2017, Kendrick answered the petition for damages, and asserted incidental demands, a cross-claim[4] against Low Land, and a third-party demand[5] against LDH. Kendrick asserted that it subcontracted with LDH to provide cutting services in connection with the project. Kendrick asserted that it also subcontracted with Low Land to furnish a crane and an operator for the project. Low Land subcontracted with LSE to furnish an additional crane and personnel, including an operator.

On October 4, 2017, Low Land answered the petition for damages, filed a cross-claim against Kendrick, and a third party demand against David Burner.[6] Low Land argued that Kendrick was negligent in hiring deficient subcontractors and failing to guarantee that the operation was being performed in a safe and satisfactory fashion. On November 13, 2017, Mitsui, a subrogated insurance carrier for the crane leased by LSE, intervened in the suit. Mitsui alleged that it was entitled to damages against Low Land, Kendrick, and United Bulk[7] as a result of the accident.

---

[4] In its cross-claim, Kendrick also named as defendants Atlantic Specialty Insurance Company and Underwriters.

[5] In its third-party demand, Kendrick also named Mesa Underwriters Specialty Insurance Company, Giambelluca Insurance Agency, Inc., and ABC Insurance Company as third-party defendants.

[6] David Burner was an independent contractor hired by Kendrick. David Burner is not a party at issue on appeal.

[7] We note that on November 3, 2017, United Bulk answered the petition for damages filed by LSE and filed cross-claims against Kendrick, Low Land, LDH, Underwriters, Atlantic Specialty Insurance Company, and Mesa Underwriters Specialty Insurance Company, and counter-claims against LSE. On November 16, 2021, United Bulk filed a motion for summary judgment against Kendrick; the trial court granted the motion and that summary judgment is on appeal with this Court. See 2022-CA-0895, **Lafayette Steel Erector, Inc. d/b/a LSE Crane and Transportation, and IC Rigging, LLC v. G. Kendrick, LLC, Low Land Construction Co., Inc., United Bulk Terminals Davant, LLC, Underwriters at Lloyd's London, and Atlantic Specialty Insurance Company.**

After various pleadings[8] were filed by the parties, Kendrick filed a motion for summary judgment on October 25, 2021, seeking dismissal of the claims against it. In its memorandum in support of its motion, Kendrick asserted that as the general contractor of the demolition project, it had no duty to oversee or assist the performance of the independent contractor's work.[9] Specifically, Kendrick argued that: (1) the crane workers unilaterally planned and carried out their actions without seeking approval or oversight from Kendrick; (2) Kendrick was not a cause-in-fact of the accident because it had no duty to supervise the crane workers who were independent contractors; and (3) Kendrick was not liable for the acts or omissions of Low Land, LSE, and LDH, who were all independent contractors. On November 5, 2021, Underwriters filed a motion adopting Kendrick's motion for summary judgment as to claims made by LSE and Low Land.

In support of its motion for summary judgment, Kendrick filed several exhibits with its memorandum, including the depositions of the crane operators and the cutter for the demolition project, as well as Kendrick's safety manager, Jeremy Bergeron.[10] In his deposition, Jeremy Bergeron explained that his job for the demolition project consisted of monitoring personnel on the ground and that "[t]he

---

[8] On December 15, 2017, LSE filed its first supplemental and amending petition for damages, adding LDH and Mesa Underwriters Specialty Insurance Company as additional defendants. On February 5, 2020, Low Land filed a motion for summary judgment praying that the trial court dismiss LSE's property damage claim against it and require that LSE indemnify Low Land against other claims. The trial court denied Low Land's motion for summary judgment. On June 4, 2020, Underwriters filed a motion for summary judgment against LSE, Kendrick, and United Bulk, praying that the trial court dismiss all claims filed against it. The trial court signed a judgment on September 1, 2020, that denied Underwriters' motion for summary judgment. The judgment further granted a motion for partial summary judgment in favor of Kendrick regarding Underwriters' duty to defend and provide insurance coverage to Kendrick.

[9] We note that the distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis. **Tower Credit, Inc. v. Carpenter**, 2001-2875 (La. 9/4/02), 825 So.2d 1125, 1129. The summary judgment evidence shows and it is not contested that the two crane operators and the cutter were independent contractors. Jason Guidry was an employee of Low Land, Jason Robichaux was an employee of LSE, and David Hernandez was an employee of LDH.

[10] In further support of its motion for summary judgment, on March 8, 2022, Kendrick filed a motion to supplement the record with the deposition of Steven Robichaux, the crane operation expert hired by United Bulk and this motion was unopposed.

crane operators were to secure the load, lower the load. And the cutters were there to safely and securely cut the load off of the original machine." Jeremy Bergeron stated that his job for the demolition project consisted of ensuring that everyone practiced regulatory safety measures.[11] He further testified that at no time during the project did he tell either the crane operators or the cutter how to do their job and they never asked for his input.

Jeremy Bergeron further testified that every morning during the project he conducted a job safety analysis (JSA) meeting with the team. Jeremy Bergeron stated that during the JSA meeting on the morning of June 13, 2017, the team agreed to proceed with the demolition project the same as the day before since it "was a success." However, he stated that he was not included in a separate meeting between the two crane operators and the cutter on June 13, 2017, wherein they changed the plan on how to proceed with the demolition project from the previous day. Jeremy Bergeron stated that if he had been informed of a "change in the plan" he would have conducted a new JSA meeting.

Kendrick also filed the depositions of the two crane operators, Jason Guidry, employed by Low Land, Jason Robichaux, employed by LSE, and the cutter, David Hernandez, owner and operator of LDH. All three men testified that it was only the two crane operators and the cutter who decided how to cut and rig for the demolition project. They all stated that there was an agreement among the three men that they all had to agree on the course of action, and if one objected, they would work out a compromise. The men further stated that at the JSA meeting on the morning of the accident, the team discussed proceeding the same way with the demolition project as the day before. Jason Guidry testified that after the first cut was made on June

---

[11] Jeremy Bergeron testified that the regulatory safety measures consisted of ensuring everyone had on "hard hats, safety shoes, glasses, making sure everything was roped off according to where [the crane workers] were working, [and] making sure [no one] entered where [the crane workers] were working[.]"

13, 2017, the pendant line did not pivot as expected; therefore, the two crane operators and the cutter had a meeting and discussed a new course of action for the demolition project.

Low Land filed a memorandum in opposition to Kendrick's motion for summary judgment arguing that summary judgment was not appropriate under the facts of this case because there were genuine issues of material fact as to Kendrick's duty for the demolition project and whether its acts or omissions were causes-in-fact of the damages incurred. Low Land asserted that Kendrick was in charge of the project, hired on-site supervisors to oversee the crane operations, and had those employees actively participate in the planning of the crane operations. Specifically, Low Land argued that Kendrick was liable for failing to supply competent crane operation planning and oversight, failing to employ competent metal cutters, and failing to supply a functioning manlift. Low Land argued that Kendrick's on-site safety manager for the project, Jeremy Bergeron, had no prior experience with cranes, had no demolition experience, and had never operated a crane or had prior training, yet Kendrick put him in a management role for the project.

In support of its position, Low Land filed the deposition of the crane expert, Steven Robichaux, with its memorandum in opposition to Kendrick's motion for summary judgment. Steven Robichaux asserted in his deposition that he was hired by United Bulk to investigate the companies that were involved in the demolition project. Steven Robichaux testified that it was "essential for the team leader [of the demolition project] to ... have experience in crane operations and rigging to oversee the people that he hired as the crane experts to do their work [so] that he [could] verify that [they were] competent in doing their task." It was his opinion that Jeremy Bergeron should have been monitoring the job and at the immediate site where the accident occurred.

LSE also opposed Kendrick's motion for summary judgment, arguing in its memorandum that summary judgment was not warranted under the facts of this case because there were multiple issues of material fact that remained. LSE stated that these issues included whether Kendrick: (1) assumed a duty in connection with the demolition operation and failed lift; (2) breached its assumed duty or its general duty of care in connection with the failed lift; (3) maintained operational control over its subcontractors in connection with the failed lift; and, (4) engaged its subcontractors to perform an inherently dangerous or ultrahazardous activity. LSE argued that these liability issues were not appropriate for summary judgment consideration. In support of its position, LSE filed several exhibits, including the report of the crane expert, Steven Robichaux.

Mitsui opposed Kendrick's motion for summary judgment, arguing that there remained genuine issues of material fact as to Kendrick's breach of duty. Specifically, Mitsui argued in its memorandum in opposition to Kendrick's motion for summary judgment that there remained genuine issues of material fact as to: (1) whether Kendrick owed a duty to LSE and its employees regarding safety at the worksite; (2) whether Kendrick assumed a duty to LSE and its employees with respect to safety at the worksite in connection with the failed lift; (3) whether Kendrick maintained operational control in connection with the failed lift; (4) whether the demolition activities, including the failed lift, was a dangerous activity; and, (5) whether Kendrick's acts or omissions caused or contributed to the failed lift.

Kendrick replied to LSE, Low Land, and Mitsui's opposition memorandums, asserting that all three parties failed to produce any factual evidence to establish that they would be able to carry their evidentiary burden at trial. In sum, Kendrick argued that none of the parties could establish the duty or cause-in-fact elements essential

to its negligence claims, thereby failing to establish the existence of a genuine issue of material fact as mandated by La. C.C.P. art. 966.[12]

On March 14, 2022, the trial court held a hearing on Kendrick's motion for summary judgment, which was adopted by Underwriters.[13] At the hearing, counsel for Kendrick, LSE, Low Land, and Mitsui presented arguments as to their clients' claims. The crux of Kendrick's argument was that as the general contractor of the demolition project, it could not be held liable for the tort of its independent contractors while performing its contractual duties. Kendrick acknowledged that although there were two exceptions to this general rule, i.e., where the work was ultra-hazardous; or if the principal reserved the right to supervise or control the work of the independent contractor, neither exception applied to the facts of this case. See **Thompson v. Winn-Dixie Montgomery, Inc.,** 2015-0477 (La. 10/14/15), 181 So.3d 656, 665.

Counsel for Low Land, LSE, and Mitsui counter-argued that there remained genuine issues of material fact as to Kendrick's duty and breach thereof. All three parties generally argued that Kendrick assumed the duty of the overall safety of the project as the general contractor and Kendrick breached that duty. Specifically, the parties argued that Kendrick's on-site safety manager, Jeremy Bergeron, actively participated in the daily safety meetings and assumed the duty for the overall safety of the project. The parties further pointed out that Jeremy Bergeron had no previous

---

[12] After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

[13] The record reveals that Underwriters filed a motion to adopt Kendrick's motion for summary judgment; however, no supporting documents were filed with the motion. Although Underwriters filed a motion to adopt Kendrick's motion for summary judgment, this request does not satisfy the requirements of La. C.C.P. art. 966(A)(4) or (D)(2). In a summary judgment proceeding, the other suit record documents must be filed in support of or in opposition to the motion in order to allow the trial court to make a factual finding. See **Point Carr Homeowners Association,** 2022-0530 (La. App. 1 Cir. 1/10/23), 360 So.3d 901, 911; **Horrell v. Alltmont,** 2019-0945 (La. App. 1 Cir. 7/31/20), 309 So.3d 754, 761. Therefore, the trial court erred in not requiring Underwriters to attach or provide the necessary documents in order to properly grant its motion for summary judgment. **Id.**

9

experience using cranes, had no expertise or knowledge to be the lift director for the job, and he failed to submit a critical lift plan the day of the accident. Therefore, the parties argued that summary judgment was improper under the facts of this case.

After the hearing concluded, the trial court took the matter under advisement. On March 16, 2022, the trial court issued its ruling in open court, granting Kendrick and Underwriters' motions for summary judgment that dismissed all of the claims asserted against them by LSE, Low Land, Mitsui, and Atlantic Specialty Insurance Company, with prejudice. On April 14, 2022, the trial court signed a judgment in accordance with its oral ruling.[14] Subsequently, LSE, Low Land, and Mitsui appealed the trial court's judgment.[15] In sum, LSE, Low Land, and Mitsui assign as error on appeal that the trial court erred in granting summary judgment in Kendrick and Underwriter's favor because there remain genuine issues of material fact as to Kendrick's duty of care to its subcontractors and whether the breach of that duty was a cause in fact of the accident.

## STANDARD OF REVIEW

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(3); **Turner v. Rabalais,** 2017-0741 (La. App. 1 Cir. 12/21/17), 240 So.3d 251, 255, writ denied, 2018-0123 (La. 3/9/18), 237 So.3d 1193.

---

[14] The trial court adopted Kendrick's memorandum in support of its motion for summary judgment as its reasons for judgment.

[15] This Court granted Kendrick's motion to consolidate this appeal with the appeal filed under our Docket Number 2022 CA 0895, **Lafayette Steel Erector, Inc. d/b/a LSE Crane and Transportation, and IC Rigging, LLC v. G. Kendrick, LLC, Low Land Construction Co., Inc., United Buck Terminals Davant, LLC, Underwriters at Lloyd's London, and Atlantic Specialty Insurance Company** for oral argument and submission.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions.[16] See La. C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. **Hines v. Garrett,** 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (*per curiam*). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).

On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, after meeting its initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. See La. C.C.P. art. 966(D)(1); **Lucas v. Maison Insurance Co.,** 2021-1401 (La. App. 1 Cir. 12/22/22), 358 So.3d 76, 84. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

---

[16] The motion for summary judgment at issue on this appeal was filed and decided under La. C.C.P. art. 966 prior to its amendment by 2023 La. Acts No. 317, § 1, and 2023 La. Acts No. 368, § 1, which became effective on August 1, 2023.

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents filed but to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. See La. C.C.P. art. 966(D)(2).

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether there is a genuine issue of material fact. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.,** 2019-0577 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Id.** at 194-95. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. **Id.** at 195.

Summary judgment is seldom appropriate for determinations based on the subjective facts of intent, motive, malice, good faith, or knowledge. See **Jones v. Estate of Santiago,** 2003-1424 (La. 4/14/04), 870 So.2d 1002, 1006. These subjective facts call for credibility evaluations and the weighing of testimony. **Berthelot v. Indovina,** 2021-1546 (La. App. 1 Cir. 6/3/22), 343 So.3d 209, 215. A trial court cannot make credibility decisions on a motion for summary judgment. **Monterrey Center, LLC v. Education Partners, Inc.,** 2008-0734 (La. App. 1 Cir. 12/23/08), 5 So.3d 225, 232. Furthermore, the circumstantial evidence usually necessary for proof of motive or intent requires the trier-of-fact to choose from competing inferences, a task not appropriate for

12

a summary judgment ruling. **Irving v. Katie Santo, Inc.,** 2018-1619 (La. App. 1 Cir. 6/13/19), 2019 WL 2609035 at *5 (unpublished); **Louisiana AG Credit, PCA v. Livestock Producers, Inc.,** 42,072 (La. App. 2 Cir. 4/4/07), 954 So.2d 883, 891, writ denied, 2007-1146 (La. 9/14/07), 963 So.2d 1001.

## APPLICABLE LAW

LSE, Low Land, and Mitsui assert claims of negligence against Kendrick. Louisiana courts have adopted a duty-risk analysis in determining whether liability for negligence exists under the facts of a particular case. **Van Cleave v. Temple,** 2018-1353 (La. App. 1 Cir. 5/31/19), 278 So.3d 1005, 1011. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (or the defendant owed a duty of care to the plaintiff) (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (or breached the requisite duty) (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the harm or the plaintiff's injuries (the cause-in-fact element); (4) the risk of harm was within the scope of protection afforded by the duty breached (the scope of the duty, scope of protection or legal cause element); and (5) actual damages (damages element). See **Landers v. USIC Locating Servs., Inc.,** 2020-0890 (La. App. 1 Cir. 4/26/21), 324 So.3d 1070, 1073-74. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. **Id.**

## DISCUSSION

### Expert Steven Robichaux

Low Land, LSE, and Mitsui's arguments on appeal rely in part on the deposition and report of United Bulk's crane expert, Steven Robichaux, in opposing Kendrick's motion for summary judgment. Steven Robichaux interviewed many of the team members for the demolition project and provided a report to United Bulk that determined "root cause findings" for the accident. The report identified several

duties that Jeremy Bergeron, Kendrick's safety manager, failed to perform and also identified regulations that Kendrick allegedly failed to comply with. Specifically, Steven Robichaux's report stated that Jeremy Bergeron "was not qualified to perform his duties as the supervisor and safety person for [the demolition project.]"

Steven Robichaux opined that it was essential for Jeremy Bergeron to have experience in crane operations and rigging to oversee the people that Kendrick hired as the crane experts to do their work properly so that he could verify that they were competent in doing their task. Low Land, LSE, and Mitsui rely on Steven Robichaux's expert report and testimony to argue that Kendrick assumed the duty of overseeing the overall safety at the jobsite for the demolition project since it hired Jeremy Bergeron as the safety manager. The appellants argue that because Jeremy Bergeron did not have any experience in crane operations and had never operated a crane before, he was not an effective team leader to perform an adequate safety assessment. The appellants further argue that because of Jeremy Bergeron's lack of crane operation experience, Kendrick breached its duty of care by failing to provide a competent safety manager.

Under the issues presented in this case, the determination of Kendrick's duty is a legal conclusion. Duty is a question of law. The inquiry is whether a plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his or her claim. **Talbert v. Restoration Hardware, Inc.**, 2017-0986 (La. App. 1 Cir. 5/31/18), 251 So.3d 532, 536, writ denied, 2018-1102 (La. 10/15/18), 253 So.3d 1304. An expert cannot make legal conclusions reserved for the court, credit or discredit witness testimony, or otherwise make factual determinations reserved for the trier of fact. **Riha v. Offshore Serv. Vessels, LLC**, 547 F.Supp.3d 550, 555 (E.D. La. 2021). When an expert opinion constitutes the actual legal conclusion, it goes beyond what is helpful to the jury and is not admissible. **Islam v. Walmart, Inc.**, 21-629 (La. App. 5 Cir. 6/8/22), 343

14

So.3d 883, 890, <u>writ denied</u>, 2022-01053 (La. 10/12/22), 348 So.3d 70; <u>see also</u> **Burk v. Illinois Central Gulf Railroad Co.**, 529 So.2d 515, 520 (La. App. 1 Cir. 1988), <u>writ denied</u>, 532 So.2d 179 (La. 1988). This Court finds that Steven Robichaux's report and deposition allocated liability among the team members and attempted to determine the legal issue of "duty." Duty is a legal issue and it is not the alleged safety expert's role to determine a party's duty or the liability of each party. Although Steven Robichaux's report and deposition were considered by the trial court, the legal issue of "duty" in this case is reserved for the court. Thus, on our review, we will consider Steven Robichaux's report to the extent that it aids our determination of the legal issue of duty. <u>See</u> La. C.E. art. 704.[17]

## Negligence Claims against Kendrick

In this case, Kendrick as the mover on the motion for summary judgment, bears the initial burden of establishing that there are no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. <u>See</u> La. C.C.P. art. 966(D)(1). We must determine whether Kendrick met its burden on the motion for summary judgment and whether LSE, Low Land, and Mitsui have shown that there are issues of material fact that preclude the granting of the motion for summary judgment. Kendrick asserts that LSE, Low Land, and Mitsui are unable to establish either the duty or the cause-in-fact element of their negligence claim against Kendrick. Specifically, Kendrick argues that any negligence claim against it must be dismissed because it was neither the cause-in-fact of the accident nor did it have a duty to prevent or supervise the crane workers, who were independent contractors, from taking the actions that caused the accident.

---

[17] Louisiana Code of Evidence article 704 provides: "[t]estimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact."

The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. **Posecai v. Wal-Mart Stores, Inc.**, 99-1222 (La. 11/30/99), 752 So.2d 762, 766. A duty is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. **Morris v. Orleans Parish School Bd.**, 553 So.2d 427, 429 (La. 1989). Whether a duty is owed presents a question of law. **Posecai**, 752 So.2d at 766. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. **Faucheaux v. Terrebonne Consol. Government**, 615 So.2d 289, 292 (La. 1993). Duty presents a legal question subject to *de novo* review on appeal. **Malta v. Herbert S. Hiller Corp.**, 2021-00209 (La. 10/10/21), 333 So.3d 384, 395, reh'g denied, 2021-00209 (La. 1/28/22), 347 So.3d 883.

Kendrick argues that as the general contractor of the demolition project, it had no duty to ensure that the crane workers, who were independent contractors, performed their work in a competent manner. No argument was presented by any of the parties that the independent contractors were not competent or qualified to perform the work for the demolition project. In support of its position, Kendrick cites the Louisiana Supreme Court case, **Thompson v. Winn-Dixie Montgomery, Inc.**, 2015-0477 (La. 10/14/15), 181 So.3d 656, 665, which held that "generally, a principal is not liable for the offenses committed by an independent contractor while performing its contractual duties."

Generally, liability for the negligent and tortious acts of another does not flow simply because of a principal-agent or principal-mandatary relationship. **Rowell v. Carter Mobile Homes, Inc.**, 500 So.2d 748, 751 (La. 1987); **Pontchartrain Natural Gas System v. Texas Brine Co., LLC**, 2018-1249 (La. App. 1 Cir. 12/30/20), 317 So.3d 715, 751, writs denied, 2021-00382, 2021-00386 (La. 6/8/21), 317 So.3d 323. Only when the relationship of the parties includes

the principal's right to control physical details of the actor as to the manner of his performance, which is characteristic of the relation of master and servant, does the person in whose service the act is done become subject to liability for the physical tortious conduct of the actor. **Rowell**, 500 So.2d at 751. The same basic rule applies to independent contractors generally; a principal is not liable for the offenses committed by an independent contractor while performing its contractual duties. **Thompson**, 181 So.3d at 665. However, there are two exceptions to the general rule of non-liability: (1) where the work performed by the contractor is ultrahazardous; or (2) if the principal reserves the right to supervise or control the work of the independent contractor. **Id**.

Whether an activity qualifies as ultrahazardous in Louisiana is a question of law. **Pontchartrain**, 317 So.3d at 751. Three factors have evolved in order to determine whether an activity is ultrahazardous: (1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury. **Id**. at 752. An activity is ultrahazardous if all three factors are present. See **Sandbom v. BASF Wyandotte, Corp.**, 95-0335 (La. App. 1 Cir. 4/30/96), 674 So.2d 349, 354. As to the first factor, that the activity must relate to land or some other immovable, the record reveals that the crane workers' demolition project did not relate to land or any other immovable. Also, as to the third factor, the activity in question would require substandard conduct to cause injury. Therefore, we find that the activity in question was not ultrahazardous.

The second exception for a general contractor's non-liability for an independent contractor is when the principal reserves the right to supervise or control the work of the independent contractor. **Triplette v. Exxon Corp.**, 554 So.2d 1361, 1363 (La. App. 1 Cir. 1989). It is not the supervision and control that

17

is actually exercised that is significant, but it is the right to exercise it that is of primary concern in determining whether a principal may be held liable for the torts of an independent contractor. **Id.**

In this case, the evidence presented establishes that Kendrick did not exercise any control as to how the crane workers performed their respective jobs. The testimonies of the two crane operators and cutter, who were not employees of Kendrick, reveal that the crane workers solely determined how to cut and rig for the demolition project and that they did not need or want any directives from Kendrick. Specifically, on the day of the accident, the record establishes that the two crane operators and cutter unilaterally decided to change the plan on how to proceed with the demolition project, without Kendrick's knowledge, thereby causing the accident. The fact that Kendrick's safety manager, Jeremy Bergeron, inspected the job site for safety measures, such as roping off the job site and making sure safety hats, shoes, and glasses were worn does not constitute the exercise of operational control. See **Triplette**, 554 So.2d at 1363.

Louisiana jurisprudence makes it clear that neither exception to the general rule of non-liability for an independent contractor applies to the facts of this case. The evidence submitted in support of Kendrick's motion for summary judgment establishes that the demolition project was not ultrahazardous and that Kendrick did not exercise any type of control over the independent contractors, Low Land, LSE, or LDH. Thus, Kendrick, the general contractor for the demolition project, cannot be held liable for the alleged acts or omissions of the independent contractors, LSE, Low Land, and LDH, and their employees, Jason Guidry, Jason Robichaux, and David Hernandez.

Kendrick's summary judgment evidence establishes that Kendrick had no special duty to ensure that the crane workers, who were all employees of independent contractors, performed the work in a competent manner, or to assist with, or oversee,

the performance of that work.[18] The testimonies of the crane operators and the cutter reveal that the three men formulated their own lift plan on the date of the accident, without any input, assistance, or supervision from Kendrick's safety manager, Jeremy Bergeron. In fact, there was a JSA meeting that morning, attended by Jeremy Bergeron, Jason Guidry, Jason Robichaux, and David Hernandez, wherein it was discussed to proceed with the demolition project in the same manner as the day before. However, this plan was not fulfilled by the employees of LSE, Low Land, and LDH, without any input or discussion from Jeremy Bergeron. The crane workers' failure to inform Jeremy Bergeron of the change in plans highlights the undisputed fact that Jeremy Bergeron was not given any opportunity to address any safety concerns or that the crane workers would have followed any instructions if they were given. Thus, we find that Kendrick did not owe any duty to LSE, Low Land, and Mitsui.[19] Accordingly, on our *de novo* review, we find the trial court did not err in granting summary judgment in favor of Kendrick and dismissing the claims of LSE, Low Land, and Mitsui with prejudice.

## CONCLUSION

For the foregoing reasons, we affirm the portion of the April 14, 2022 judgment that granted Kendrick's motion for summary judgment and dismissed with prejudice the claims asserted by Lafayette Steel Erector, Inc., d/b/a LSE Crane and Transportation, Low Land Construction Co., Inc., Atlantic Specialty Insurance

---

[18] Mitsui and LSE argue that the United Bulk-Kendrick Master Service Agreement, Sections 2.0 and 3.0 obligated Kendrick to "maintain complete control, direction, and responsibility over its own employees and subcontractors and over the work, [demolition of the Krupp reclaimer], including the work of its contractors and subcontractors." According to Mitsui, Kendrick's contractual duty to United Bulk shows that Kendrick owed a similar "general duty of care" to Mitsui. We note that Kendrick may have owed a general contractual duty to United Bulk to maintain control of the subcontractors and of the work performed; however, there is no evidence introduced by Mitsui or LSE that this duty was breached. Furthermore, Mitsui and LSE are not parties to the Master Service Agreement.

[19] Kendrick's summary judgment evidence establishes that as the general contractor, it did not assume the duty of the overall safety of the project as to the independent contractors. Therefore, we pretermit any further discussion on the assumption of duty.

Company, and Mitsui Sumitomo Insurance Company of America. We reverse in part the portion of the judgment that granted summary judgment in favor of Underwriters at Lloyd's of London due to the fact that it failed to attach any documents in support of its motion for summary judgment.[20] All costs of this appeal are assessed to Lafayette Steel Erector, Inc., d/b/a LSE Crane and Transportation, Low Land Construction Co., Inc. and Atlantic Specialty Insurance Company, and Mitsui Sumitomo Insurance Company of America.

**AFFIRMED IN PART; REVERSED IN PART.**

---

[20] Since Underwriters' insured is being dismissed from this lawsuit, it would be appropriate for the parties to enter into a joint judgment also dismissing Underwriters without the need for a new motion for summary judgment.